Bissell, J.,
delivered the opinion of the court.
Most suits for malicious prosecution ultimately find their way into the appellate courts. The principles by which the rights of parties are to be measured are therefore tolerably well settled, and our own reports generally furnish adequate precedents to guide us in the examination of a record and the consideration of the judgment. The present is scarcely an exception to this general rule.
The appellee, Kyes, bought out a grocery store in 1898, in Denver, and carried on a retail grocery business for a few months thereafter. During the time he was engaged in this line, he bought goods of. the appellants, Williams & Wood, who were evidently wholesale dealers in that class of merchandise. His last purchase was on Saturday, the 1st of April. On the next day, Sunday, in evident continuation of a bargain commenced on Saturday, Kyes invoiced his store, and sold his stock, including the goods which he had the same day purchased of Williams & Wood, to another party, for cash, and received the consideration. He failed to pay the accounts which he had contracted with sundry merchants in the city, and it led to several meetings between them, to some acrimonious discussion, and to an ultimate criminal prosecution. When Kyes was brought to Williams & Wood’s place, he was confronted with several merchants from whom he had purchased merchandise, and an attorney, and there was a strong effort made to compel a settlement between him and his creditors. He declined to make any bargain or to do anything in that direction, although he admitted that he had sold the goods, and had the money.
At that interview he was shown a report alleged to have been made by It. Gf. Dun & Co., a well-known commercial agency, which attempts to learn all about the financial con *222 dition and history of men engaged in merchandising, and supply the information thus acquired to its various customers. The report which had been furnished by Dun & Co., and which was shown to Kyes, contained statements to the effect substantially that Kyes had purchased a stock for $1,500 cash, had some $1,500 in the bank, and some real property at Sterling, which was assessed at $2,000 or $3,000. According to the report, Kyes stated this realty belonged to him, and that his personalty was of the value and description stated. On the strength of this report, the credit member of the firm of Williams & Wood, who are defendants in this action, extended some considerable credit to Kyes, and at the time of the sale he owed the house a little upward of $300. There was considerable controversy in the case as to whether Kyes had ever made this report. Dun & Co.’s clerk testified that he made it to him personally, and that he gave it to the house, and furnished a copy of it to Williams & Wood, who testified that they proceeded on the faith and strength of it. This was denied by Kyes and his principal clerk, who was his brother-in-law. Both'of them testified that the statement on which Dun & Co. based their report was made by Weir, the clerk, and not by Kyes, and that Kyes never saw Hoagland, and never made any statement to him about the matters contained in the report. Of course, this was a matter for the determination of the jury.
There was some other evidence offered which tended to show the good faith of Williams & Wood in the institution of their criminal prosecution, and they offered some testimony to the effect that they had laid their case before the district attorney of the district, and, on the strength of his advice, had filed the complaint. There was also evidence tending to show the abseuce of express malice, and a good deal of evidence to establish a probable cause to believe that Kyes intended to commit fraud in his dealings with them.
We do not intend to go over the case, and recite the testimony, nor express our opinion about it. This would not, in our judgment, be wise, since the case must go back for a new *223 trial, and our conclusions might possibly be put to wrong uses. What we have stated was essential to an adequate knowledge of the case, and to make our suggestions applicable, and serve as a basis for our conclusions.
When the evidence was concluded, the court, by consent of parties, charged the jury orally. The charge was taken down by the stenographer, copied out, and furnished the jury, and the defendants took exceptions to the various portions of the instructions. They also asked instructions on one topic which really furnishes the only basis on which the case can be reversed. We are so clearly of the opinion the jury were not adequately instructed with reference to what constitutes probable cause that we are quite astute to find error in order that the case may be correctly presented for determination. The charge, as far as it went, was clear, satisfactory, and an accurate statement of the law. All essential matters in the case were stated, and, except in one slight particular, the legal definitions of probable cause and malice were fairly and accurately outlined. The fifth instruction relates to malice, which is correctly defined. This instruction concludes with a sentence that “ a criminal prosecution begun for the purpose of collecting a debt is strong, if not conclusive, evidence of malice.” We quite agree with the learned judge who tried the case. A prosecution commenced for such a purpose furnishes very strong evidence of malice. The case justified that part of the charge, because there was a good deal of evidence in the case which tended to show that the real animus of the prosecution was to force the payment of the appellants’ bill. The court therefore had a right to so charge the jury; but we are inclined to the opinion that this should not be taken or stated to be conclusive evidence, because, although that might have been its ultimate purpose, this purpose might have been conceived and carried out without the presence of malice, according to its general and legal definition. This prosecution may have had a double motive. The parties might desire to punish the offender for a breach of the law in order that it might serve *224 as a lesson to other customers, as well as compel this particular party to pay what he owed. Aside from this one claim, we do not discover anything in the charge which is open to just criticism, except that the learned judge failed to adequately define or determine for the jury what facts would constitute probable cause if they should find them to be true. This is the fundamental difficulty with the charge. Probable cause is a mixed question of law and fact where the circumstances which show its existence or the want of it are matters which must be left for the determination of the jury. Whether, if the juiy find these circumstances exist, they are in themselves sufficient to constitute probable cause, is a matter of law for the court; and it is the duty of the judge on the trial to collate the testimony, and tell the jury that, if they find certain facts, these facts constitute probable cause, and, being thus found, the verdict must be for the defendants. On the other hand, the jury must be instructed, if they fail to find them, then the case shows a want of probable cause; and, all other elements of the case being maintained, they must find for the plaintiff, and assess his damages accordingly. This is the general doctrine of the American courts, and they are in substantial harmony on this question. The fourth instruction which the defendants asked embodied this principle, with a statement of what the case showed in a given direction ; and the court was asked to instruct the jury that if the defendants had reasonable grounds to think Kyes had committed the offense charged, and that the arrest was procured in good faith, under this belief, they should find the existence of probable cause from this circumstance. The instruction is not entirely quoted, and is probably not a very apt grouping of the facts which ought to have been put before the jury in expressing the law on this subject. In other words, it lacks the fullness which an instruction on the subject of probable cause ought to exhibit in the gathering together of all the evidence tending in that direction. Notwithstanding this, we fail to find in the court’s charge anything which corresponds to it, or which in any manner *225 tended to tell the jury what facts would amount to probable cause. For this reason, we conclude it was error for the court to decline this particular instruction. The rules are very clearly stated in the following cases: Brown v. Willoughby, 5 Colo. 1; Murphy v. Hobbs, 7 Colo. 541; Gurley v. Tomkins, 17 Colo. 437; Brooks v. Bradford, 4 Colo. App. 410; Stewart v. Sonneborn, 98 U. S. 187.
This error in the charge compels us to reverse the case, and return it for a new trial.

B,eversed.