HENRY L. WHITE, Appellant, v. INTERNATIONAL TEXT BOOK CO., and O. O. CRANE, Appellees.

**Appeal:** LAW OF THE CASE. A determination by the appellate court on a former appeal that the evidence was sufficient to take the case to the jury on all the issues raised became the law of the case, whether right or wrong.

**Malicious prosecution:** PROBABLE CAUSE: EFFECT OF SETTLEMENT. As a general rule the settlement or attempted settlement of a debt with an accused does not of itself show that a criminal prosecution was instituted without probable cause; and it is also generally true that a dismissal of criminal proceedings brought about by the accused, or by reason of a settlement, is not such a termination of the proceedings as will justify an action by the defendant therein for malicious prosecution; but an agreement not to prosecute upon payment of a debt is *prima facie* evidence

of want of probable cause, which, in the absence of evidence to the contrary becomes conclusive.

**Same.** Ordinarily an action for malicious prosecution will not lie for the prosecution of a civil suit; but if there has been a seizure of goods or an arrest of the defendant. therein it will lie.

**Same:** ESSENTIAL ELEMENTS. To sustain an action for malicious prosecution the previous prosecution must be shown, its instigation by the defendant, its termination by acquittal or discharge of plaintiff, want of probable cause and malice. There must be a complete termination of the original prosecution, but this may be shown by an acquittal, discharge after preliminary examination, or by a dismissal of the prosecution.

**Same:** RIGHT OF RECOVERY: EFFECT OF CONVICTION. Conviction of an accused upon false testimony and without foundation in law will not defeat an action for malicious prosecution: Nor will an acquittal entitle him to recover if it is shown that he was in fact guilty of the original charge against him.

**Same:** PROBABLE CAUSE. Probable cause is a defense to any action for malicious prosecution; so that settlement of an action for malicious prosecution of a civil suit by payment of money, either upon defendant's procurement or by a settlement understandingly made and without duress, is a distinct admission that something was due and constitues a defense to the action for malicious prosecution.

**Same:** MALICE. If one uses the criminal law for some collateral or private purpose, rather than to vindicate the law itself, or knowing that only a civil wrong has been committed, he will be deemed to have acted maliciously.

**Same:** TERMINATION OF PROSECUTION. The dismissal of a prosecution with the taxation of costs against the county is a sufficient termination of the proceeding to authorize an action for malicious prosecution.

**Same:** SETTLEMENT OF PROSECUTION: DURESS: EVIDENCE. The settlement of a prosecution by one charged with a crime must have been voluntary on his part to prevent his suing for malicious prosecution. In this action the evidence is held to show that settlement of the prosecution was induced by duress and that the proceeding was instituted to compel payment of a civil debt.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

TUESDAY, MAY 7, 1912.

ACTION for malicious prosecution. At the conclusion of plaintiff's testimony, the trial court, upon defendants' motion directed a verdict for the defendants. Plaintiff appeals.—*Reversed.*

*John N. Hughes,* and *C. R. Sutherland,* for appellant.

*F. L. Anderson* and *C. D. Harrington,* for appellees.

DEEMER, J.—This is the third appearance of the case before this court. Opinions on the other appeals will be found in 144 Iowa, 98, and 150 Iowa, 27. In these two opinions it was held there was enough testimony to take the case to the jury upon every issue tendered on the last trial in the district court save one, and that was a plea to the effect that the criminal proceeding was settled and dismissed at plaintiff's instance and request, and that, having been so disposed of, the action was not determined in such a manner as to entitle plaintiff to sue for malicious prosecution. That question was argued on the second appeal, but we did not decide it, because no such issue was made by the pleadings as they then stood. To the issue thus tendered on the last trial plaintiff filed a reply in which he denied the alleged settlement, and further pleaded that the money which he paid to defendant or its agent was obtained from him by duress, that the payment was involuntary and against his will and, because of his then imprisonment, that the payment was under protest and with knowledge on the part of the defendant Text-Book Company that he did not owe it anything. After hearing plaintiff's testimony, the trial court thought the showing conclusive against a right to recover, and it refused to submit the issue of the nature of the payment to the jury.

If the verdict was directed upon any other ground,

then the order was erroneous because on former appeals we held that, under the issues as then presented, there

*1. APPEAL: law of the case.* was enough testimony to take the case to the jury on each and every proposition. This made the law for the case; and, whether correct or not, it was the duty of the trial court to observe and follow our previous decisions. This is too fundamental to require the citation of authorities in its support, but see *Hensley v. Davidson Bros.*, 135 Iowa, 106; *Russ v. Am. Cereal Co.*, 121 Iowa, 639, and cases cited.

The sole question which we may consider upon this appeal is the effect to be given the testimony as to the payment made by the plaintiff while he was under arrest and

*2. MALICIOUS PROSECUTION: probable cause: effect of settlement.* in jail. It is true, of course, as a general rule, that a settlement or attempted settlement of a debt with the accused does not of itself show that the proceedings were instituted without probable cause, and it is also true, as a general rule, that a dismissal of the proceedings by procurement of the accused, or by reason of a settlement between the parties, is not a sufficient termination of the proceedings to justify an action by the defendant therein for malicious prosecution. *Holliday v. Holliday*, 123 Cal. 26 (55 Pac. 703); *Emery v. Ginnan*, 24 Ill. App. 65. But it is also true that, if one arrests another on a criminal charge for the purpose of compelling the payment of an indebtedness, an agreement not to prosecute further upon payment of the debt is *prima facie* evidence of want of probable cause and conclusive in the absence of satisfactory evidence to the contrary. *Prough v. Entriken*, 11 Pa. 81. Now, while there is an apparent conflict in the case as to the effect of a settlement and dismissal of a criminal action upon an action for malicious prosecution, the great weight of authority seems to favor the proposition that where a criminal proceeding is dismissed or abandoned by procurement of the party prosecuted, by settlement or com-

promise with the prosecutor, it is not such a final determination of the matter in his favor as will support an action for malicious prosecution. *Brown v. Randall*, 36 Conn. 56 (4 Am. Rep. 35); *Craig v. Ginn*, 3 Pennewill (Del.) 117 (48 Atl. 192, 94 Am. St. Rep. 77, 53 L. R. A. 715); *Morton v. Young*, 55 Me. 24 (92 Am. Dec. 565); *Langford v. Boston R. R.*, 144 Mass. 431 (11 N. E. 697); *Sartwell v. Parker*, 141 Mass. 405 (5 N. E. 807); *McCormick v. Sisson*, 7 Cow. (N. Y.) 715; *Lamprey v. Hood*, 73 N. H. 384 (62 Atl. 380); *Welch v. Cheek*, 125 N. C. 353 (34 S. E. 531); *Russell v. Morgan*, 24 R. I. 134 (52 Atl. 809). In an early case Lord Tenterden said: "I think this mode of termination does not furnish any evidence that the action was without probable cause. If this should be allowed, the defendant would be deceived by the consent, as, without that, he would certainly have gone on with the action, and might have shown a foundation for it. I have no doubt about it." *Wilkinson v. Howel*, 1 M. & M. 495. The reason for the rule seems to be that where the termination of the case is brought about by a compromise or settlement between the parties, understandingly entered into, it is such an admission that there was probable cause that the plaintiff can not afterwards retract it and try the question which by settlement he waived. *Emery v. Ginnan*, 24 Ill. App. 65.

But in many of these cases exceptions are created to the effect that the settlement must have been voluntary and understandingly made. For instance, in *Morton v. Young, supra*, the Supreme Court of Maine said, among other things:

The same legal consequences do not follow acts done under duress of arrest and protest as when done freely and voluntarily, under the abuse as under the legitimate use of legal process. Suppose that, instead of settling the defendant's demand, the plaintiff had given him a deed or bond, how could he defend an action brought on

such instrument if the fact of his giving it is conclusive evidence that the defendant had a valid claim against him? Is the plaintiff the worse off for having paid his money than he would have been if he had given a deed or bond to get his liberty? . . . There is nothing in principle, and we have not found anything in authority, which places a party upon less favorable footing who pays his money to procure his release from arrest on a groundless suit than he who gives his bond or deed for the same purpose. If he may avoid the latter, he may recover the former. . . . The law does not make successful wrong a shield to protect its perpetrator from liability to afford redress to the injured party. If the wrongdoer has his hour of triumph, his hour of retribution is sure to come at last. The man who falsely, maliciously, and without probable cause sues out a process, arrests another, and compels him to pay money to procure his liberty commits a wrong for which the law affords the sufferer redress in damages. The suing out of legal process is an abuse of the law to cover the fraud, the very wrong which the action for malicious prosecution was instituted to redress. It would be a reproach upon the law if it should allow the payment of the money thus wrongfully and illegally extorted from the plaintiff to have any legal effect against him. In *Watkins v. Baird,* 6 Mass. 506 (4 Am. Dec. 170) the court, Parsons, C. J., held, not only that a deed given to procure the deliverance of a party from unlawful arrest and imprisonment on a groundless claim was void, but that an action of malicious prosecution might properly be maintained. *Pierce v. Thompson,* 6 Pick. (Mass.) 193.

Again in *Marcus v. Bernstein,* 117 N. C. 31 (23 S. E. 38), the Supreme Court of North Carolina said:

In *Langford v. Railroad Co.,* 144 Mass. 431, 11 N. E. 697), it was held that: 'Where a *nol pros.* is entered by the procurement of the party prosecuted, or by his consent, or by way of compromise, such party can not have an action for malicious prosecution.' We do not think, however, that the facts in the present case make an exception to the general rule. The plaintiff protested all the time that his arrest was malicious and without just cause,

There was no compromise, as the plaintiff only paid his debt, which he was in duty bound to do, and the defendant paid the cost ·of prosecution. This was the arrangement or agreement, and nothing appears to show that the plaintiff procured the *nol. pros.*, any more than that the defendant entered it on his own motion. . In fact, his paying the costs rather indicates his desire to have a *'stet processus,'* as it is called in the early books, and also indicates that his action was instituted more for the purpose of collecting his debts than because of any criminal offense, or from any patriotic motive, which purpose can receive no sanction in this court, and should not be encouraged in any court. It is an unauthorized mode of the strong controlling the weak. 'Procure' means 'to contrive, to bring about, to effect, to cause.' Webst. Dict. 'Procure' means action, and the *nol. pros.* must have been at the instance or request of the plaintiff. If it can not be seen at whose instance the dismissal was entered, then the general rule prevails, because the reason and the grounds upon which the exception is based do not appear.

In *Robbins v. Robbins*, 123 N. Y. 597 (30 N. E. 977), the Court of Appeals of New York said:

The rule, requiring that before an action for malicious prosecution can be maintained the plaintiff is bound to show a termination of the criminal proceeding, has for its foundation that it can not be known that the prosecution was unjust or unfounded until it is terminated; and, if the action for malicious prosecution were allowed to be maintained before the termination of the criminal proceeding, the plaintiff might be found guilty in that proceeding and yet maintain her action for malicious prosecution on the ground that she was not guilty, and that the defendant had no probable cause to believe her guilty; and thus there might be two conflicting determinations as to the same transaction. The law so far encourages criminal complaints as to protect the complainant against a civil action for damages in case the criminal proceeding, fairly conducted, results in the conviction of the person charged with crime. Such conviction, fairly obtained, without fraud or conspiracy, is held to be conclusive evidence of probable cause. But where the criminal proceed-

ing is terminated favorably to the accused, or without his conviction, so that there can be no further prosecution of the alleged offense without the commencement of a new proceeding, then there has been a sufficient termination thereof to enable him, proving the other requisite facts, to maintain an action for a malicious prosecution. It can not, in reason, make any difference how the criminal prosecution is terminated, provided it is terminated and at an end. Take a case like this: A poor and helpless woman is arrested, and the police justice informs her, before he makes his final decision, that he is inclined to hold her to bail, and she, being friendless and unable to furnish bail, promises good behavior in the future if he will discharge her, and then he enters a discharge. What reason can there be for holding, in such a case, if she can show that the criminal proceeding was instituted maliciously and without probable cause, that she may not maintain her action for malicious prosecution? The circumstances under which she was discharged may furnish competent evidence upon the issue of probable cause and malice and on the question of damages; but proof that the discharge was made under such circumstances can not, upon principle, furnish an absolute bar to the action. The motive of the judge or justice in making the discharge is wholly immaterial. The real foundation of the action is the malicious prosecution without probable cause, and the termination of the criminal proceeding is a mere technical matter, in no way concerning the merits of the action, and is a mere condition precedent to its maintenance. Therefore any termination such as we have above mentioned as a general rule furnishes the condition precedent.

Some of the expressions found in this opinion we do not approve, for to our minds they carry the rule too far. We cite the case for what it is worth, and as an authority which recognizes an exception to the general rule already stated. *Craig v. Ginn,* 3 Pennewill (Del.) 117 (48 Atl. 192, 94 Am. St. Rep. 77, 53 L. R. A. 715), contains a review of the authorities upon the proposition, and the suggestion is there made that, if the settlement is procured by fraud or duress, the dismissal of the pro-

ceedings by the prosecutor is such a termination of the case as will authorize an action for malicious prosecution. In *White v. Apsley Rubber Co.*, 194 Mass. 97 (80 N. E. 500, 8 L. R. A. (N. S.) 484), the court said:

A warrant having been issued, he was arrested at his home, and, after being detained in custody for an appreciable time by the officer serving the process, he was released, while no further steps were ever taken in the prosecution of the case. Upon conflicting evidence, the weight of which was wholly for the jury, they further could find that the criminal proceedings were instituted solely for the purpose of coercing the plaintiff to abandon any claim or right he might have to occcupy the house as a tenant, and that when this object had been accomplished by a surrender of his tenancy, and the removal of his family and household goods, he was released from arrest. Indeed, it must have been perfectly plain, if either his evidence or that of his wife was accepted as substantially stating what occurred, that the criminal law was invoked, not for the purpose of vindicating justice, but to get rid of a troublesome tenant. If so found, there was an abuse of criminal process, and this is sufficient to support an action against the instigator and promoter of the wrong. Wood v. Graves, 144 Mass. 365, 366 (11 N. E. 567, 59 Am. Rep. 95); *White v. Apsley Rubber Co.,* 181 Mass. 339 (63 N. E. 885).

In *Smith v. Markensohn*, 29 R. I. 55 (69 Atl. 311), the Supreme Court of Rhode Island said:

There was conflicting testimony as to whether the rent was due at the time of the plaintiff's arrest, and as to whether he then denied it to be due. The jury evidently found that the plaintiff was not indebted to the defendant when arrested, and that he did not so admit, but the contrary. They also apparently found that the defendant either did not believe, or was not reasonably entitled to believe, that the plaintiff was indebted to him when he caused his arrest. Upon the testimony and the appearances of the witnesses on the stand, I think the jury amply warranted in so finding, and upon such findings and fact

duress by imprisonment might be construed to exist. *Strong v. Grannis,* 26 Barb. (N. Y.) 122; *Watkins v. Baird,* 6 Mass. 506 (4 Am. Dec. 170); *Richardson v. Duncan,* 3 N. H. 508; 9 Cyc. 444, and cases cited; 10 Am. & Eng. Ency. of Law (2d Ed.) 322, 324. If a person arrested while protesting that he is not indebted to the person causing his arrest pays the money demanded simply to procure his freedom, he is not thereafter debarred from maintaining an action for malicious prosecution. *Morton v. Young,* 55 Me. 24 (92 Am. Dec. 565). The cases cited by the defendant are not necessarily inconsistent with the case last named as to the law. In the present case the testimony in my judgment required the submission of the question to the jury as to whether the payment of the $20 was made in settlement or under duress to obtain his liberty. The verdict of the jury is, in effect, that the payment was made under duress and protest, and that there was want of probable cause. I think that the jury might properly so find upon the evidence.

In this connection, and to the end that our conclusions may not be misunderstood or misinterpreted, it is deemed important to differentiate some of the cases cited in support of the general rule, and elaborate somewhat upon the rules obtaining in this jurisdiction with reference to the action of malicious prosecution. As a general rule such an action will not lie in this state for the prosecution of a civic suit, no matter how malicious the plaintiff may have been in bringing it. *Smith v. Hintrager,* 67 Iowa, 109; *Wetmore v. Mellinger,* 64 Iowa, 741. But, if there be a seizure of goods or an arrest of the defendant, then such an action will lie, although the original proceedings be of a civil nature. In many of the cases which announce the general rule above stated, the doctrine prevails that one may be held liable for maliciously prosecuting a civil action, although there be no arrest or seizure or detention of goods. Again, we have recognized a distinction between the maliciously suing out of a writ and an improper use of the writ after it has been sued

3. SAME.

out, although distinctly pointing out that the actions are of the same general character.

To be entitled to recover for malicious prosecution, a plaintiff must show (1) the previous prosecution; (2) the instigation or procurement thereof by the defendant; (3) the termination thereof by the acquittal or discharge of the plaintiff; (4) want of probable cause for the prosecution; and (5) that it was malicious. There must be such a disposition or termination of the original case as that it can not be renewed, but the prosecutor, if he proceeds further, must be driven to a new proceeding. A verdict of acquittal in a criminal case, a discharge of the defendant after a preliminary examination, or a voluntary dismissal of the action either by the prosecuting witness or by the prosecuting officer is held in this state to be a termination of the suit. *Farmer v. Norton*, 129 Iowa, 88; *Hidy v. Murray*, 101 Iowa, 65; *Green v. Cochran*, 43 Iowa, 544; *Miller v. Runkle*, 137 Iowa, 155. Upon the last proposition, however, authorities are conflicting. *See contra, Bacon v. Towne*, 4 Cush, (Mass.) 217; *Cardival v. Smith*, 109 Mass. 159 (12 Am. Rep. 682); *Langford v. Boston, etc.*, 144 Mass. 431 (11 N. E. 697). But see *Graves v. Dawson*, 133 Mass. 419.

4. SAME: essential elements.

Even if there be a conviction in the main case, the plaintiff in an action for the malicious prosecution thereof may still recover if he shows that the testimony, upon which the conviction was had, was false and without foundation in law. *Bowman v. Brown*, 52 Iowa, 437; *Olson v. Neal*, 63 Iowa, 214.

5. SAME: right of recovery: effect of conviction.

In the event of acquittal, the defendant in a suit for malicious prosecution may show that plaintiff was in fact guilty of the crime charged, and such showing will be a complete defense to the action. *Parkhurst v. Masteller*, 57 Iowa, 474.

Of course, in any case, if the defendant can show

that he had probable cause for prosecuting the action, this is a complete defense.  So that, as we understand the

6. SAME: probable cause.

cases, if one is being prosecuted for maliciously prosecuting a civil suit, a compromise and settlement of that suit by the payment of money, either upon defendant's procurement or by a settlement understandingly made and without duress, is a distinct admission of liability on his part, and the dismissal of the suit pursuant to such a settlement is not a termination thereof in defendant's favor, but, on the contrary, a distinct admission on his part that something is due.

It is a universal rule that, if one makes use of the criminal law for some collateral or private purpose rather than to vindicate the law, as to compel the delivery of

7. SAME: malice.

property or the payment of a debt, such proceedings will be deemed to be malicious. And, if one substitutes a criminal prosecution knowing that a civil wrong only has been committed, he will be deemed to have acted maliciously.  *Williams v. Kyes*, 9 Colo. App. 220 (47 Pac. 839); *Ross v. Langworthy*, 13 Neb. 492 (14 N. W. 515); *Lueck v. Heisler*, 87 Wis. 644 (58 N. W. 1101).

Ordinarily, when one begins a criminal proceeding in good faith, it should be prosecuted to the end that the law may be vindicated, and our statutes make it a crime for one to compound an offense.  See Code, sections 5301, 4889, 4890.  But the statutes also provide that certain offenses may be compounded.  The sections permitting this read as follows:

When a defendant is prosecuted in a criminal action for a misdemeanor, for which the person injured by the act constituting the offense has a remedy by a civil action, the offense may be compromised as provided in the next section, except when it was committed:  (1) By or upon an officer while in the execution of the duties of his office:  (2) Riotously; or (3) With an intent to commit a felony. (Code,

section 5622). If the party injured in such a case appear before the court to which the papers on a preliminary examination are returned, at any time before trial on an indictment for the offense, or the trial of an appeal in the district court, and acknowledge in writing that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom. But in that case the reasons for the order must be set forth therein and entered upon the minutes. (Code, section 5623). The order authorized by the last section is a bar to another prosecution for the same offense. (Code, section 5624). No public offense can be compromised, nor can any proceedings for the prosecution or punishment thereof, upon a compromise, be stayed except as provided in this chapter. (Code, section 5625.)

By the express language of these statutes no public offense can be compounded nor proceedings stayed except as provided in the acts quoted. There is no claim that

8. SAME: termination of prosecution.

these sections were followed in this case, and it also appears, from the record made before the justice, that the case against the plaintiff was dismissed and the costs taxed to Marshall county. This was a sufficient termination of the proceedings under the authorities already cited.

The only question left then in this, Was there such a settlement of the criminal case as to preclude the plaintiff from maintaining the action for malicious prosecution?

9. SAME: settlement of prosecution: duress: evidence.

This is a mixed question of law and fact, and we may assume, for the purpose of the case that, if the plaintiff voluntarily procured the dismissal and intentionally, understandingly, and without duress settled the matter, he has no standing in court with his action for malicious prosecution, although the action was a criminal one, and the necessary steps were not taken which would authorize a compromise and compounding of the offense. This concession is made simply *arguendo* and without the purpose or

intent of holding that one may bring a criminal action for the purpose of enforcing the collection of a debt, and, having been successful in getting the money, may then dismiss the action, and be free from liability. Admitting for the purpose of the discussion that one may be precluded from prosecuting such an action by voluntarily procuring its settlement and dismissal, it is quite clear we think, under the later and more modern authorities, that this must be voluntarily and understandingly done and for the purpose of putting an end to the proceedings. If the settlement is brought about by duress, then it should not be held a bar to an action for the malicious use of the processes of the criminal law. Going now to the testimony, we find the following with reference to the alleged settlement and compromise. These excerpts are taken from the record for the purpose of showing the nature of the alleged settlement according to the plaintiff's contention:

Plaintiff testified in substance as follows:

In the afternoon of that day I went to my brother-in law's house on the east side, and between six and seven o'clock Mr. Crane and Mr. Wilson, the constable, I think it was, came up to the house. Mr. Crane came up, and said: 'The constable is coming down, and will give you another chance to turn this money over.' I did not see the constable while he was talking. I said I was willing to turn it over if they were willing to settle with me for everything. He said he couldn't do that; he didn't have that authority; that the constable was coming down there, and, unless I turned it over, he would let the constable arrest me. After that the constable came up and served his warrant and took me away. Mr. Crane started off with us. He walked down the street with us, down town to the police station, and, when we got down there, he said: 'I will give you another chance to turn this money over,' and I said, 'I have told you how I would turn it over, when you are ready to settle with me.' That was just as we turned into the police station, and about 8 o'clock at night. They took me into the police station and put me in a cell, searched me, and

took my money and watch and whatever I had in my pocket. I asked to telephone to an attorney, and they would not allow me to do that. They said they would telephone, but I heard from no one. In about two hours the constable came down and took me to Crane's office. I went into his office. I was not taken up to his office at my request. I did not request it. His office was located about a block and a half from the police station. I was taken into the office and into the presence of Mr. Crane, and Mr. Crane said: 'White, if you will turn over this money, we will release you and let you go;' and I said to him that I would turn it over if they wanted to settle with me the same as I said, in full. He said they wouldn't do that. Well, I said, I would like to have a chance to get bonds, if I could. He said he would call the thing off, and he called the constable in, and the constable said that the best thing for me to do was to turn the money over, and Mr. Crane would see that I would not have to go to Marshalltown. Mr. Hench was there, and said my wife was crying and was very nervous, and that it was the best thing I could do. I wasn't able to get any bail, so I thought that was the best thing, to turn the money over to them. The constable was out in the hall. He was walking up and down the hall past the door, and I was in his custody all the time. I turned the money over and went home about ten o'clock. I went to my brother-in-law's house. My family were up there. . . . 'Mr. Crane,' I said, 'I would rather let it go into court, or something, give bond.' And Mr. Crane said: 'If that is the way you are going to do, we will not go any further with it. We will call it off, or something of that kind.' . . . I don't know just what he did mean. He said, unless the money was turned over, he would call it off. I don't know what he meant. Those were the particular words. I did not understand that he would call off a settlement. After he said that he would call it off, he called the constable in, and the constable said that, unless the money was turned over, he would have to take me to Marshalltown with him; and after that, the money was turned over. He spoke these words shortly after I went in there. I wanted Mr. Crane to allow me the $20 in the trunk, and he would not do it. I said that I would prefer to let it go on, or

something to that effect. Mr. Crane allowed me the commission and my salary check, also for the two days, but did not allow for the $20 on the trunk outfit. The only thing unsettled at that time was pertaining to the trunk outfit.

Another witness, a brother-in-law of the plaintiff, also testified as follows:

Mr. Crane had been to my house that forenoon about getting Mr. White to return the money. He was there when the arrest was made. Q. Did you telephone to Crane's house that night after Mr. White had been arrested? A. Yes; and talked to Mr. Crane over the phone. I asked him if we put up that money if he would release Mr. White or get him released from the jail. He said he would, to come over there, or he would come over to the office and see about it. Q. Did he ask you to come to the house? A. I don't recall that he did. I think I said to him that I would rather see him at the office. My object in calling Mr. Crane was not to settle the prosecution. I offered to furnish the money if he would release Mr. White and get him released that night on account of his family. I did not want to settle any prosecution. I did not want to settle anything, only to get Mr. White out of jail. That was all I was attempting to do. Mr. Crane told me to come to the office. I went over to Crane's office. I had money with me. I do not remember how much. . . . I did not know the amount that they were claiming from Mr. White. I knew somewhere near the amount. My idea was that it was somewhere around $80 or $90. I did not have that amount with me. I did not go over at the suggestion of Mrs. White. She did not talk to me about going over. I did not talk with any member of the family about going over. I simply went on own motion. I wanted to get Mr. White released. Mr. Crane was not at his office when I got there. I met him at the foot of the stairs. I think nothing was said in regard to this matter until we got into the office. I think Mr. Griswold and Mr. Kupfer were there. When I got into the office, I think I made the remark that it was rather a mean thing to do to have him arrested. Mr. Crane got very angry, took off his coat, and said he would beat my head. . . . Q. Did you ask Mr. Crane, 'Can't this matter be settled up?'

or words to that effect? A. I think so. I don't whether that was the next remark or not. I asked him if he would not release White if the money was put up, and he said he would; and I said, 'Then send for Mr. White.' Q. You asked him to send for Mr. White? A. I think I did. I asked to have him sent for to get him released. When Mr. White got over there, he turned over some money. Q. At your request Crane sent for White, didn't he, Mr. Hench, in order that enough money might be put up there? A. Yes, sir. Q. White and the officer came in? A. Yes, sir, I think there was present White, Crane, the officer and myself. Q. Mr. Crane had two checks there didn't he? A. They had some papers I believe. Mr. White indorsed those two checks, I believe. Q. Mr. Crane explained to him that he could indorse the two checks and turn them in as cash? A. Yes. I think Mr. White consented to sign the two checks. He did sign them as a matter of fact, and gave them to Mr. Crane. Mr. White paid a part of the money, and I made up the balance. Q. After you made up the $89.10, there was something due for court costs, about $10? A. Yes. The whole amount was made up between us. I put up about $26 and Mr. White the balance. I did not know that Mr. White got a receipt. I did not see Mr. Crane sign a receipt. They were at a table. I was off quite a little ways, and paid no attention to their settlement. I was not there to settle the thing for them. Mr. White and Mr. Crane did the figuring. Mr. White had a pencil in his hand, writing. I did not pay much attention to the details of the conversation. I did not know that they had passed receipts. I was in the office probably an hour. They talked about the amount of the costs and his release, and the right of the constable to release him. Q. It was understood that White was to turn over the money and the amount of the costs, and the constable was to release Mr. White? A. Yes. He was released. I testified on the former trial that I wanted to pay up the money and get him released. I do not know what he means by settlement. Q. Wasn't this question asked you, 'It was understood at that time between you and Mr. Crane and Mr. White that White was to be released from custody of the officer and the criminal prosecution dismissed,' and you answered that 'Yes'? A. Yes; that is correct. Q. Now the amount that was allowed

Mr. White there over and above what was included in the checks was for two days' salary for work done the week he was discharged? A. I believe it was. Q. Was not this question asked you at the other trial in this case: 'Q. You wanted to settle the matter for him, White'? And did you say 'Yes'? A. Yes. Q. Was not this question asked you: 'Q. It was at your instance and request that Mr. Crane sent for Mr. White, wasn't it'? And didn't you answer, 'Yes'? A. Yes, sir. Q. Was not this question asked you: 'You told Mr. White there when he was brought over, White, you must settle this up, or words to that effect, didn't you'? A. Yes sir. Q. Was not this question asked you: 'You told him you would furnish the money'? And didn't you answer that, 'Yes'? A. Yes, sir. Q. When Mr. White was brought up there, did he do or say anything in the way of protest against his owing this claim? A. He protested against this settlement. He said he did not want to settle that way. He said he wanted to settle the way he first wanted to settle with Mr. Crane, less the amount that was due him. I can not say whether Mr. Crane gave him a receipt in full of all matters. I did not know what any of the papers signed contained. I did not look them over. Mr. Crane came to the house to have Mr. White sign some papers later in the night after Mr. White had been released. He said then that he didn't think Mr. White meant to take the money or embezzle it.

From this testimony a jury was justified in finding that the alleged settlement was not by plaintiff's procurement; that the money was paid under protest and for the purpose of securing plaintiff's release and to prevent his being taken to Marshalltown; that the payment was not voluntary, but under duress, and that the whole proceeding was resorted to, not for the purpose of vindicating the law, but to compel plaintiff to make a settlement of his accounts with the defendant Text-Book Company, or rather such a settlement as the company's agent insisted the plaintiff should make. There was not a complete adjustment of all matters between the parties, nor was the payment of the money intended as a final adjustment. Some matters were

still left open. The trunk account was left unsettled, and it seems that plaintiff agreed to "stand certain attorney's fees to be taken from his trunk refund." Surely under such a state of facts it should not be held as a matter of law that plaintiff secured his release by his own procurement, or that he voluntarily settled his account with the Text-Book Company and compromised their difficulties. To so hold would be a reproach to the law. Assuming, without deciding, that one charged with a crime may, without authority of court, compromise and compound it, or procure his release from the charge in such a manner as to bar him from maintaining an action for malicious prosecution, it must appear, we think, that the one accused voluntarily procured his release, that his payment was in full settlement of his accounts and for the purpose of extinguishing a conceded indebtedness, and that this payment was freely and voluntarily made; that is to say, not under protest or by reason of duress. Any other rule would encourage resort to the criminal law for the purpose of enforcing a debt and the greater the wrong the less liability to punishment, It may be that some of the courts whose opinions we have cited would hold plaintiff barred of relief by reason of the claimed compromise and settlement; but we are not prepared to go to that extent. Our view is that the questions as to the nature and effect of the settlement should have gone to the jury under proper instructions, leaving it to that body to say whether or not there was a voluntary compromise and settlement brought about by plaintiff's procurement.

For the error pointed out, the judgment must be, and it is—Reversed.