Max Wilson, Appellant, v. J. W. Lapham, Appellee.

**MALICIOUS PROSECUTION: Defenses—Directed Verdict.** Testimony *conclusively* showing that a criminal prosecution was instituted in good faith and without any improper motive or purpose, and on the advice of public prosecutors and reputable attorneys, presents a complete defense to an action for damages for malicious prosecution, and imposes on the court the duty to direct a verdict for defendant, even though the issue of want of probable cause may be a jury question.

**MALICIOUS PROSECUTION: Dismissal by County Attorney.** The obligation of a plaintiff in an action for malicious prosecution to show that the criminal prosecution against him has been *terminated* is met by proof that the criminal prosecution was voluntarily dismissed by the county attorney.

**FALSE IMPRISONMENT: Illegality of Arrest—Improper ''John Doe'' Warrant.** The filing of an information against a purely fictitious person, i. e., ''John Doe,'' and the issuance of a warrant of arrest accordingly, *when the true name of the accused is known to the informant* (but not to the court), do not *necessarily deprive* the magistrate of jurisdiction.

**FALSE IMPRISONMENT: Illegality of Arrest—Liability.** Principle affirmed that, where an arrest is made under a warrant regular and valid on its face and issued by a magistrate having jurisdiction of the subject-matter, the warrant affords complete protection to the officer and the informant.

*Appeal from Woodbury District Court.*—C. C. Hamilton, Judge.

OCTOBER 23, 1923.

PLAINTIFF appeals from a judgment for costs entered against him, upon a directed verdict in an action to recover damages for malicious prosecution and false imprisonment. The facts are fully stated in the opinion.—*Affirmed.*

*C. A. Plank,* for appellant.

*Burgess, Gill, Sammis & Boylan,* for appellee.

STEVENS, J.—I. Appellant pleaded his cause of action in two counts,—one for malicious prosecution and the other for false imprisonment. The defenses interposed to the charge of

1. MALICIOUS PROSECUTION: defenses: directed verdict. malicious prosecution were a general denial and justification based upon the advice of counsel. As a defense to the charge of false imprisonment, appellee pleaded that the prosecution was instigated by him with probable cause, upon the advice of counsel, and in the good-faith belief of the appellant's guilt, and that the arrest and detention of appellant were by an officer authorized to make an arrest, and under a warrant issued by a magistrate having jurisdiction to issue same, which was regular upon its face.

There is no material or substantial conflict in the evidence, from which it appears that, on August 26, 1921, about 10:40 P. M., Walter A. Lapham, brother of appellee, was shot and killed by a strange man, who was attempting to effect a robbery. The tragedy occurred in the office of the deceased in a garage which he was operating in Sioux City, in the presence of an employee by the name of Harmon. The robber entered the office through an inner door, through which the office communicated with the salesroom, and commanded the deceased and Harmon to put up their hands, and later to remove their diamond rings and lay them upon the counter. Harmon complied with this demand, but Lapham did not do so promptly, but inquired of the robber if he was "serious" or "kidding." Deceased approached the robber so closely that the latter shot,—killing Lapham instantly. The robber wore a blue shirt, without coat or waistcoat, and brown trousers. Harmon described him as a man with dark hair, peculiarly shaped forehead, and bulging eyes, which re-

vealed an unusual amount of white; and said he was about the size and appearance of appellant. Appellant had been at one time employed by deceased in his garage; but, at the time of the tragedy, was engaged in an automobile repair business for himself at Hawarden, a near-by place. Appellee is about 35 years of age, an attorney at law, and, at the time, was postmaster at Chanute, Kansas. He arrived in Sioux City, in response to a telegram notifying him of his brother's death, about two days after the shooting occurred. A state agent, the county attorney's office, and an assistant attorney-general, who resided at Sioux City, and other officers instituted an immediate investigation and search for the robber. Harmon informed them that the robber, whose face below the eyes was concealed by a mask, strongly resembled appellant, noting the peculiar forehead, the bulging eyes, and the appearance of more than the ordinary amount of white on the eyeball, and gave it as his belief that the appellant was the murderer. The only other fact disclosed by the investigation tending to corroborate the statements and belief of Harmon was that appellant was in Sioux City on the evening of the tragedy. Appellee does not appear to have made any particular independent investigation, but relied upon the information furnished him by the county attorney, the state agent, and other officers, as to the evidence against appellant. Appellee was not acquainted with appellant, but saw him before the arrest was made. Harmon, with the state agent, went to Hawarden and observed appellant, for the purpose of confirming his identification of him at the time of the murder. Harmon was at no time positive of his identification of appellant, but insisted upon the strong resemblance between the two men in the particulars stated, and also in size and general appearance.

The warrant issued by the magistrate upon the information signed and sworn to by appellee was delivered to the state agent, who, in company with the assistant county attorney, arrested appellant at Hawarden, and took him to Sioux City, where he was placed in jail and kept in custody for several days. During the time he was in custody, he was frequently questioned and cross-examined as to his past life, his whereabouts at the time of the tragedy, and his possible guilt of the crime. A blue shirt found in the room in which appellant slept was seized at the time

of the arrest, and taken to Sioux City by the state agent. Appellant also alleged in his petition that the officers refused to permit him to consult an attorney privately, and that they compelled him to put on his blue shirt, go to the garage, and assume the role of the robber, and to re-enact the robbery. A handkerchief was also tied over his face, concealing the lower portion thereof. Harmon and appellee were present, and observed the demonstration. Harmon then observed that appellant was probably larger and taller than the robber, although he was not at once discharged. On the Monday morning following his arrest, he was taken to the office of the county attorney, and informed that he was released. The prosecution was voluntarily dismissed by the county attorney, without a preliminary examination, and without appellant's having been taken before the magistrate. The evidence further shows without conflict that appellee was informed by the county attorney, the state agent, and other officers, of all the facts known to them before the arrest and recited in the record. He declined to file an information until he consulted the attorney who had been employed to look after the administration of his brother's estate. The attorney was a witness in his behalf, and testified to the information given him by appellee, and that he advised him that it was his duty to institute the prosecution. Appellee testified that he acted without malice, under the belief that appellant was guilty, and in reliance upon the advice of the county attorney and the attorney consulted by him, to whom he made a full disclosure of all the facts known to him.

To entitle a plaintiff to recover in an action for malicious prosecution, the burden is upon him to show (1) the previous prosecution; (2) the instigation or procurement thereof by the defendant; (3) the termination thereof by the acquittal or discharge of the plaintiff; (4) want of probable cause; and (5) that the prosecution was malicious. *White v. International Text-Book Co.*, 156 Iowa 210; *Pierce v. Doolittle*, 130 Iowa 333. The instigation of the prosecution by the appellee is admitted. Appellant, as stated, was discharged upon the voluntary dismissal of the prosecution by the county attorney. This constituted a termination thereof, within the meaning of that term as used in actions for malicious

2. MALICIOUS PROSECUTION: dismissal by county attorney.

prosecution. *Farmer v. Norton,* 129 Iowa 88; *White v. International Text Book Co.,* supra. A discharge or acquittal by a magistrate is prima-facie evidence that the prosecution was instituted without probable cause, and casts the burden upon the defendant of proving to the contrary. *Hidy v. Murray,* 101 Iowa 65; *Krehbiel v. Henkle,* 178 Iowa 770. The presumption arising from the discharge or acquittal of the defendant by the magistrate is not conclusive, but, ordinarily at least, would raise a question of fact, to be submitted to the jury. *Hidy v. Murray,* supra.

Appellant was not acquitted by the magistrate upon a hearing, nor was any evidence offered against him. Whether the voluntary dismissal of the prosecution by the county attorney would make out a prima-facie case in favor of the plaintiff, we need not discuss. The absence of any conflict in the evidence on the issues of malice and want of probable cause imposed upon the court the duty of determining these as questions of law. *Jenkins v. Gilligan,* 131 Iowa 176; *Erb v. German Am. Ins. Co.,* 112 Iowa 357; *Parker v. Parker,* 102 Iowa 500. Malice may be inferred from the want of probable cause, but such inference is not a necessary one. *Shaul v. Brown,* 28 Iowa 37; *Erb v. German Am. Ins. Co.,* supra; *Jenkins v. Gilligan,* supra; *Pierce v. Doolittle,* supra; *Walker v. Camp,* 63 Iowa 627. To constitute malice, there must have been an improper motive or purpose. Ill will or hatred are not, however, necessary ingredients thereof. Legal malice may exist without either. The accusation of a crime, without probable cause, followed by an arrest and the consequent public exposure, is a matter of such a serious character as to justify an inference of malice therefrom: *Jenkins v. Gilligan,* supra; *White v. International Text Book Co.,* supra; *Gabriel v. McMullin,* 127 Iowa 426.

If one about to instigate a criminal prosecution consults an attorney, and makes a full and fair statement of the facts to him, and such attorney advises a criminal prosecution based upon such a statement, his advice may be relied upon as a defense to a subsequent action for malicious prosecution. *Necker v. Bates,* 118 Iowa 545; *Wilson v. Thurlow,* 156 Iowa 656; *White v. International Text Book Co.,* 144 Iowa 92; *Parker v. Parker,*

supra; *Pierce v. Doolittle,* supra.  We said, in *Wilson v. Thurlow,* supra, that:

"Advice of an attorney, to constitute a good defense, must be based on a full and fair statement of the facts within defendant's knowledge, and the advice must have been acted on in good faith, and with the belief that there was good cause for the prosecution."

Obviously, this is ordinarily a question of fact for the jury. The above statement of the evidence is sufficient to indicate that appellee acted wholly upon the information and advice given him by the county attorney and other officers, and upon the advice of the attorney consulted by him, who was not employed by the prosecution.

The only eyewitness to the murder was Harmon, who knew appellant; and the facts and circumstances narrated by him were of a character to reasonably suggest that the appellant was the perpetrator of the crime.  The peculiarities of his forehead and eyes, his size and movements, and their resemblance to appellant's were all observed by Harmon at the time of the tragedy. He communicated what he saw to appellee.  No information was, however, filed, or arrest made, until Harmon confirmed his suspicion by a visit to Hawarden and the observations there made of appellant.  Appellee had no apparent cause whatever for ill will or hatred toward appellant unless appellant was the slayer of appellee's brother.  The evidence without conflict shows that he declined to file an information upon the advice of the county attorney alone, and until he had laid the matter before a reputable practicing lawyer, who was not employed on behalf of the prosecution, and obtained his advice.  The attorney consulted testified that he advised appellee to file the information, and that his advice was based upon the facts stated to him by appellee, and detailed in his testimony.  Harmon was mistaken in his identification of appellant, who was entirely innocent of the crime charged.  The county attorney, becoming convinced of his innocence, requested the magistrate to dismiss the charges and to release him. The crime, one of the highest known to our criminal law, was one for which the perpetrator, if convicted, might forfeit his life.  The slayer escaped in the darkness, leaving no other clew to his identity than such as resulted from the

observations of Harmon. It is, of course, to be regretted that appellant was charged with so grave an offense, of which he was entirely innocent, and that he should have been subjected to public ignominy therefor; but it was clearly the duty of the trial court to determine from the undisputed evidence whether there was evidence of a want of probable cause or of malice upon which a jury could base a verdict for the plaintiff. The want of probable cause alone is not sufficient. Malice, in addition thereto, must be shown. Assuming that the favorable termination of the prosecution made out a prima-facie case for appellant, the record as a whole so conclusively negatives malice that a verdict, if one had been returned in favor of the appellant, could not be sustained. The facts necessary to make out a complete defense were so clearly proved that there was no issue arising upon this count of the petition, upon which the jury had a right to pass.

II. We come now to consider the cause of action based upon the alleged false arrest and imprisonment of appellant. The information and warrant named "John Doe" as the defendant. One element which is the very gist of an action for malicious prosecution is not necessary to the recovery of damages for false imprisonment,—that is, malice need not be proved.

3. FALSE IMPRISON-
MENT: illegality
of arrest: im-
proper "John
Doe" warrant.

*Snyder v. Thompson,* 134 Iowa 725; *Allen v. Leonard,* 28 Iowa 529.

Ordinarily, where one merely instigates a criminal prosecution before a magistrate having jurisdiction over the subject-matter, he is not liable for false imprisonment for the arrest and detention of the defendant. *Snyder v. Thompson,* supra; *Rush v. Buckley,* 100 Me. 322 (61 Atl. 774); *Stubbs v. Abercrombie,* 42 Cal. App. 170 (183 Pac. 458); *Pell City Mfg. Co. v. Swearingen,* 156 Ala. 397 (47 So. 272); *Tryon v. Pingree,* 112 Mich. 338 (70 N. W. 905); *McIntosh v. Bullard, Earnheart & Magness,* 95 Ark. 227 (129 S. W. 85); *Grove v. Van Duyn,* 44 N. J. L. 654; *Nowak v. Waller,* (N. Y.) 30 N. E. 868; *Gelzenleuchter v. Niemeyer,* 64 Wis. 316 (25 N. W. 442); *Langford v. Boston & A. R. Co.,* 144 Mass. 431 (11 N. E. 697); *Gifford v. Wiggins,* 50 Minn. 401 (52 N. W. 904).

The rule is universal that, where an arrest is made by an

officer in possession of a warrant regular and valid upon its face, and issued by a magistrate having jurisdiction of the sub-ject-matter, this fact affords complete protection to the officer and the informant. *Snyder v. Thompson,* supra; *McGrew v. Holmes,* 145 Iowa 540; *Buseman v. Schultz,* 154 Iowa 493; *Thompson v. Jackson,* 93 Iowa 376; *Green v. Talbot,* 36 Iowa 499; *Londegan v. Hammer,* 30 Iowa 508.

*4. FALSE IMPRISON-
MENT: illegality
of arrest: lia-
bility.*

It is no defense, in an action for false imprisonment, that the defendant acted upon the advice of an attorney. *Young v. Gormley,* 120 Iowa 372.

The warrant under which appellant was arrested was issued by an officer having jurisdiction of the subject-matter, and upon proper complaint, and was valid and regular upon its face, unless the failure to designate appellant by his true name, instead of as "John Doe," was such a failure to comply with the statute as to defeat jurisdiction.

Section 5577 of the Code provides that "the names of the parties, if the defendants be known, and if not, then such names as may be given them by the complainant," must be stated in the information. The name of "John Doe" was wholly ficti-tious, and appellant had never been known by that name. The question here presented has not previously been before this court. It has, however, been considered by the New York courts, under a statute differing somewhat from our own. It has been held by the New York Supreme Court that jurisdiction is not attained by an information charging a crime to have been committed by John Doe, where the name of the party claimed to have committed it is known. *Mead v. Haws,* 7 Cowen (N. Y.) 332; *People v. Dunning,* 113 App. Div. 35 (98 N. Y. Supp. 1067).

It will be observed that the statute requires the prosecution to be against the accused by his true name, if known; otherwise, in the name of the person given by the complainant. In this case, appellee knew the name of appellant before the informa-tion was filed, and, under the statute, his name should have been inserted therein. The reason assigned for this omission was that appellee thought it would be better if a fictitious name were used, and that he was advised by the attorneys in charge of the prosecution and consulted by him that it would be all right to

charge the defendant in the form stated. The arrest of no one but appellant was contemplated by appellee at the time of filing the information, and the warrant was served upon appellant by the state agent, in the presence of an assistant county attorney of Woodbury County, who had accompanied him to arrest appellant. It does not appear from the record that the true name of the defendant was communicated to the magistrate issuing the warrant, or that the warrant was prepared by him. Under the facts of this case, we are of the opinion that the justice of the peace was not without jurisdiction to file the information and issue the warrant in question. The practice is subject to great abuse, and what is here said is based upon the facts of this case.

We have, under a previous subdivision of this opinion, held that the evidence conclusively negatives malice, and that no action will lie for malicious prosecution. As stated, we have not previously been called upon to consider the question here under discussion. The justice of the peace had jurisdiction of the subject-matter of the information, and was authorized to issue a warrant for the arrest of appellant. The allegations of misconduct on the part of the officers and appellee and of oppression against appellant were pleaded in aggravation of damages, and not as a separate cause of action. If it could be claimed otherwise, no error is assigned by appellant upon the ruling of the court as to the cause of action based upon these allegations.

It is our conclusion that the court did not act without jurisdiction in filing the information, although appellant's name was not correctly stated therein, and that the warrant issued, being otherwise regular upon its face, was valid, and the arrest made thereunder legal. The judgment of the court below is, accordingly,—*Affirmed.*

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.