BLECKLEY CO. v. GOODWIN.

MORTGAGE—NOTE—STOPPING AND COMPOUNDING A CRIMINAL PROSE-
CUTION is not a valid consideration for a note and mortgage.

Before WATTS, J., Abbeville, June, 1897.   Reversed.

Action in foreclosure by Sylvester Bleckley Co. against
C. T. Goodwin and C. I. Cummings.   Judgment for plain-
tiff.   Defendant appeals.

*Messrs. Graydon & Graydon,* for appellants, cite: 18 S.
C., 577; 1 Bail., 588; 2 Hill, 625; 2 McM., 356; 2 Strob., 117.

*Messrs. Bonham & Watkins,* contra, cite: 7 S. E. R., 49;
2 McM., 356.

Feb. 22, 1898.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is an action begun January
31st, 1896, to foreclose a mortgage on real estate, a lot in
the town of Greenwood, in Abbeville County, executed by
defendant to plaintiff, December 11th, 1890, to secure a
note for $100, bearing same date, payable one day after
date.   The answer admitted the execution of the note and
mortgage, but set up as a defense, among others, that the
note and mortgage were given to compound a criminal pro-
secution, which had been begun by the plaintiffs against
one Grant Davis, charged with selling crops under lien, and
were utterly without consideration, contrary to public policy,
null and void.   Upon the testimony reported by the master,
the Circuit Court overruled all the defenses set up by the
defendant, holding that none of the defenses were estab-
lished by the testimony, and decreed against the defendant
for foreclosure, &c.

The defendant appeals on the following exceptions: "1.
Because it was error in his Honor to hold that none of the
defenses set up were established by the testimony.   2. Be-
cause the evidence introduced by the plaintiffs themselves

showed that the only consideration for the mortgage of Goodwin to themselves, was the stopping of a criminal prosecution against one Grant Davis, and, therefore, his Honor should have held that the transaction was contrary to public policy, illegal ,and null and void.   3. Because it was error in his Honor not to state his conclusions of law and his findings of fact separately, under the peculiar circumstances of this case.   4. Because the evidence showed that the only consideration for the giving of the note and mortgage by the defendant to the plaintiffs was the stopping and compounding of a criminal prosecution, which is an illegal consideration, and his Honor erred in not so holding."

The first and principal question presented is, whether the Circuit Court erred in not finding as a matter of fact that the consideration of the note and mortgage was the stopping of a criminal prosecution against one Grant Davis by plaintiffs, and in finding that the testimony did not establish such fact.   In a case in equity, this Court will reverse a finding of fact by the Circuit Court when the appellant satisfies this Court that the preponderance of the evidence, is against the finding of the Circuit Court.   In this case, however, the overwhelming weight of the evidence is against the conclusion of the Circuit Court.   Three witnesses were examined in the case, and their testimony reported to the Court—the defendant, Goodwin, in his own behalf, and J. H. Van Hasseln and John N. Bleckley for the plaintiffs.   The execution of the note and mortgage was admitted.   The defendant, Goodwin, testified in part as follows: "I happened in the store of Sylvester Bleckley Co.   Mr. Fretwell said to me that they had a negro in jail for selling crops under lien; that I was a preacher, and ought not to let him be sent to the penitentiary.   I didn't know Grant Davis.   I said if he was a good man he should not be allowed to suffer.   He said if I would go on his bond they would release him and give him a chance to make another crop.   That he could prove that he had sold crops under lien.   He said that there would be no risk to

run; that Grant Davis had thirty acres of land, and would give a mortgage on it to secure my bond. Mr. Fretwell then sent for Davis and had him brought to the store. * * * I will further state that I did not understand that it was a debt, but simply a security to get him out of jail." On cross-examination, he testified in part: "I went to the jail to see Grant Davis. * * * I gave the note and mortgage to get him out of jail. * * * Then there was another paper drawn up. It was a mortgage made by Grant Davis to me. I indemnified them by giving my note and mortgage, and Grant Davis indemnified me by giving me a mortgage. It was to hold then in case Grant Davis ran off. * * * I had never seen Grant Davis till I saw him that day in jail. Without ever knowing him, I gave this note and mortgage to secure the debt—get him out of jail." He further testified: "Mr. Fretwell suggested my going to the jail to see him" (Davis). J. H. Van Hasseln, one of the plaintiffs, testified in part: "I was book-keeper in the firm of Sylvester Bleckley Co. I drew the papers. Goodwin came there, and after going backward and forward to jail, he came to the office and executed the note and mortgage for $100, which was a part of what Grant Davis owed us for supplies and fertilizers. Upon that, Grant Davis was released from jail. The consideration of the note and mortgage was to cover part of what Grant Davis owed us for fertilizers. * * * I drew the note and mortgage of C. T. Goodwin to us for $100, and the note and mortgage of Grant Davis to Goodwin on thirty acres in Honea Path township to indemnify Goodwin against the payment of $100 to us. * * * We were to keep the mortgage of Grant Davis to Goodwin in our safe till this debt was paid. We were simply custodians of it, and it was by agreement that we kept it. * * * The agreement was this: that if Grant Davis didn't pay the $100, Goodwin should pay, and that he secured the debt to that extent." On cross-examination, he testified: "The understanding was that if Goodwin paid the $100, all these papers would be turned over

to him, and we were to keep the papers till that was done."
The papers here referred to were the note and mortgage by
Davis to Goodwin, and a mortgage by Davis to plaintiffs
on the same land, executed April 30, 1890, to secure two
notes—one for $100, dated January 16, 1890, payable Octo-
ber 1, 1890, containing a mortgage clause covering stock,
crops, &c.; and the other, note for $50, dated April 30,
1890, and payable November 1, 1890.   In addition to these,
Davis, on January 16, 1890, had given plaintiff a lien on
his crops for $175.   The testimony shows that the amount
due by Davis to plaintiffs at the execution of the mortgage
in question was about $100.   Mr. J. H. Van Hasseln fur-
ther testified: "There was no other consideration between
the Sylvester Bleckley Co. and Goodwin for the giving of
that mortgage except the getting of Grant Davis out of
jail. * * * The Davis mortgage to Goodwin was drawn
just to carry out their agreement among themselves. * * *
We wanted the Goodwin mortgage to us because a mer-
chant wanted the money and not security. * * * We
wanted any security we could get, but the Goodwin mort-
gage was given by agreement among themselves, and not
at our solicitation."   He further testified, "Grant Davis was
in jail.   He was brought over to our office and was there
when the papers were executed.   He went his own way
after that."   Exactly by what means Davis was released
from jail does not appear in the evidence, but Mr. J. H. Van
Hasseln testified, "I think Mr. Fretwell sent the constable
to the jail for the negro.   I know of no bond being exe-
cuted.   I didn't go on the bond, and I have no knowledge
either direct or indirect of anybody else going on it.   There
may have been an order from the trial justice to let him
out.   That is a question for the sheriff.   I suppose there
was a warrant sworn out for him on which he was arrested;
I don't know that I ever saw the warrant, perhaps never
did.   I don't know what became of the prosecution.   The
case wasn't prosecuted.   Grant has been at liberty ever
since."   Mr. John N. Bleckley, who was in the employ or

service of the company, assisting, as he testified, "in the
outside work of the company," who was a witness and pres-
ent when the mortgage in question was executed, testified,
in part, as follows: "The consideration of Goodwin signing
the papers was to befriend Grant Davis.   Goodwin was to
pay the $100. * * * Goodwin went Grant's security for
$100 of his indebtedness. * * * The agreement was that
if Goodwin paid the $100, we would turn over the Davis
mortgage to us, and also the Davis mortgage to Goodwin,
to him.   We were to keep both until the debt was paid.
The consideration of Goodwin's mortgage was to get Davis
out of jail."   From the testimony, extracts from which are
given above, it is very manifest that the consideration of
the note and mortgage was the release of Davis from jail,
and the abandonment of the prosecution against him for
selling property or crops under lien without notice.   That
such a consideration is illegal, and that a note and mort-
gage based thereon cannot be enforced in equity, is conclu-
sively established by the case of *Williams* v. *Walker*, *Flem-
ing & Co.*, 18 S. C., 577, and the authorities therein cited.

It is not necessary to consider the third exception.

The judgment of the Circuit Court is reversed, and the
complaint is dismissed.