PIERSON v. GREEN.

1. PRACTICE—MOTION TO MAKE DEFINITE—DEMURRER.—Where the averments of new matter in an answer are stated in such uncertain, ambiguous, inferential manner, that it is questionable whether they can avail the defendant, plaintiffs' remedy is motion to make more definite, and not demurrer.

2. MORTGAGES—COMPROMISING CRIMINAL PROSECUTION—MARRIED WOMEN.—A bond and mortgage given by a wife for money to pay her husband's debts and to compromise a criminal prosecution against him, which the mortgagee actively aided in carrying into effect, is void as to so much of the mortgage debt as was used in compromising the criminal prosecution, but valid as to the remainder used in paying husband's debt.

Before WATTS, J., Sumter, September, 1903. Modified.

Foreclosure by Samuel M. Pierson against Frances Green and J. S. Corbett. From Circuit decree, plaintiff appeals.

*Mr. L. D. Jennings,* for appellant, cites: *Duress should be pleaded:* 7 Ency., 247, 248, 249, 250, 251. *What constitutes duress:* 10 Ency., 321, 322, 323, 324. *Demurrer is proper if no duress is alleged:* 14 P. R., 564; 10 Ency., 2 ed., 337.

*Messrs. McLaughlin & McLeod,* contra (no citations).

September 9, 1904. The first opinion was delivered by

MR. JUSTICE GARY. This is an action for the foreclosure of a mortgage. The answer of Frances Green, among other things, contains the following allegations:

"She further alleges that if the plaintiff has a bond and mortgage executed by her, as is alleged in the complaint, it was entered into by this defendant under duress, and if executed at all, was executed in consideration of compromising a criminal prosecution against her husband, W. M. Green, who was at the time of the execution in prison charged with obtaining goods under false pretenses from Ducker & Bultman, and. that fact was known to the plaintiff when he received the bond and mortgage, if he did receive them, and when he advanced the money, if he advanced any; and that said bond and mortgage thus executed, if executed at all, was against law and public policy, and thus null and void and of no force and effect."

The defendant, J. S. Corbett, alleged substantially the same facts in his answer, and also set up a mortgage which he claimed under the facts of the case was paramont to the plaintiff's mortgage.

The plaintiff demurred to the said allegations, on the ground that they did not state facts sufficient to constitute a defense.

His Honor, the Circuit Judge, in his decree, says:

"I overruled the demurrer interposed by the plaintiff's attorney to the defendant's answers, holding that the answers did state a defense, and that the plaintiff's attorney could have asked that defendants make their answer more definite and certain, but this he failed to do.

"I find as a matter of fact, that the consideration of the mortgage executed by the defendant, Frances Green, to the plaintiff, Samuel Pierson, was the compromising of a criminal prosecution, and that she, the defendant, Frances Green, executed said bond and mortgage, set forth in the complaint, to get her husband, Thomas Green, out of jail and to compromise a criminal prosecution against him; that this fact was fully known to the plaintiff, Samuel Pierson, when he received said mortgage; and I, therefore, hold that said bond and mortgage thus executed by the mortgagor, Frances Green, is null and void."

He also found that Corbett's mortgage was a valid encumbrance on the property, and ordered a sale of the premises.

The first, second and third exceptions assign error on the part of the Circuit Judge in overruling the demurrers to the defenses hereinbefore mentioned. The ground of the demurrer was that the facts alleged were not sufficient to constitute a defense.

In section 596 of Pomeroy's Code Remedies, the rule in such cases is thus stated: "If the averments of new matter, in some sort embrace or refer to facts which, if properly pleaded, would amount to a defense or counter-claim, but are stated in such an uncertain, ambiguous, inferential manner, that it is a question whether they can avail the defendant; in such cases it is settled that the demurrer is not the proper mode of reaching the defect. Instead of the special demurrer, the codes have substituted the motion to make the pleadings more definite and certain."

The appropriate remedy on the part of the appellant was a motion to make the complaint definite and certain, and not that by demurrer.

The next question for adjudication is whether the Circuit Judge erred in his finding, as to the consideration of the plaintiff's mortgage.

The plaintiff testified as follows:

"The whole of the bond and mortgage is due, with interest. I sold her husband, who gave me his name as W. T. Thomas, one mule on February 27th, 1901, for $150, for which I took a chattel mortgage for balance due of $109. About the 9th of November, 1901, he rode the mule to my stable, and about an hour afterwards, Ducker & Bultman, or their agent, came there for the mule, stating they had a chattel mortgage on the mule, and wanted to foreclose the mortgage. I refused to give up the mule, and in one hour Bultman had Frances Green's husband arrested, I understand, for obtaining goods under false pretenses, and was put in jail. Three or four days later, Frances

36—69

Green, claiming to be his wife, wanted to get some money to settle up all of his indebtedness. She wanted to give a separate mortgage to each one that her husband owed. I explained to her that to give a mortgage to each one her husband owed would cost more than to give one mortgage and borrow the money on one paper. She went off, and in a day or two came back and asked me if I would loan her the money on her land or place, offering to give me a mortgage on her land. I made the loan, as shown by said bond and mortgage, and then she asked me to go with her to settle the claim against her husband, so she would know it was done right. I paid W. M. Graham $60, as shown by receipt and check, marked exhibits 'C' and 'D.' Mr. Graham, so far as I know, had brought no charges against her husband. I paid Ducker & Bultman, at the request of Frances Green, $62.12, on account of her husband, as shown by check marked exhibit 'E.' I paid H. L. B. Wells, magistrate, at the request of Frances Green, $6.70 cost in aforesaid arrest: I paid $10 to L. D. Jennings for bond and mortgage, and $1.50 to clerk of Court for recording bond and mortgage, and she paid me $3.60 for feeding the mule her husband left at my stables up to the time I had let her have it to take back home. She agreed to pay me $59 on mule, I had above mule, if I would let her have mule back, and I did so upon her agreeing to fatten and take good care of the mule, and to pay me the balance of $50, and interest, in the fall of 1902. The above is what I did with the money at her request. I did not use any influence whatever nor force to get her to sign said mortgage, but she voluntarily came to me to give said mortgage. I had taken out no warrant for Frances Green's husband, nor did I have anything to do with him being put in jail. Lien and mortgage of W. T. Thomas, *alias* W. M. Green, to Ducker & Bultman, put in evidence and marked exhibit 'I,' also chattel mortgage of same party to Ducker & Bultman, marked exhibit 'J,' and the papers marked 'I' and 'J' were formally transferred to me, and by me marked satisfied, all at the request of Frances Green. * * *

All the accounts and amounts paid by Frances Green with the money for which she executed mortgage, were for debts contracted by her husband, W. T. Thomas, *alias* W. M. Green, and at the time of signing the bond and mortgage her husband was in jail, and she came to me to get the money to get her husband out of jail, and to have the prosecution aforesaid dropped or compromised. Even if she had not paid me the $59, I would have let her have the money on the land anyway. But she agreed to pay the $59 before signing the bond and mortgage, in order to get the mule back."

He testified again: "I am satisfied she made the paper to get money and compromise the Bultman debt, which caused him to be in jail, and which would settle the criminal prosecution against her husband, and I was satisfied of that at the time she executed the bond and mortgage in question."

The defendant, Frances Green, after testifying that she signed the mortgage voluntarily, and without persuasion on the part of the plaintiff or any one else, also said: "Mr. Pierson told me that if I signed this mortgage, he would get Thomas out of jail, and would have the criminal prosecution compromised. I signed the mortgage because my husband was in jail, and to get him out."

While the testimony does not satisfy this Court that the plaintiff, in consideration of the mortgage, agreed to take the necessary steps to stop the criminal prosecution and release W. M. Green from jail, it, nevertheless, appears from his own testimony, that he not only had full knowledge of the illegal purpose for which the money was to be used, but, likewise, *actively participated in accomplishing that result.* Furthermore, the execution of the mortgage and his active participation, were parts of the same transaction.

"It is held in England, that where the agreement is innocent in itself, but the intention of one of the parties is unlawful, as where goods are bought or money borrowed to be used for an unlawful purpose, the mere fact that the other party knows of such purpose renders the agreement illegal and void. * * * In the United States, where some Courts have fol-

lowed the English rule, most of the Courts have taken a different view, and have held that the mere knowledge of the seller of goods or services, or of the vendor or lessor of property, that the buyer intends an illegal use of them, is no defense to an action for the price or for rent. * * * If, instead of there being mere knowledge on the part of the lender that the money is to be used in an illegal transaction, it is the understanding of both parties that it shall be so used, it cannot be recovered.

"If, in addition to mere knowledge of the buyer's illegal intention, the seller does some act in aid of, or in furtherance of, the unlawful design; if, in short, he assists in any way the carrying out of the design, the agreement is void, and he cannot recover the price." 9 Cyc., 571-575.

In the case of *Wallace* v. *Lark,* 12 S. C., 578, the action was on a note; the defendant alleged, *first,* that the note was given as the purchase money of a horse, to be used in the Confederate service during the then late war; and, *second,* that said horse was actually so used. The plaintiff demurred to this defense. The Supreme Court, after stating that neither of said facts necessarily involved the idea that the vendor knew, *at the time of the sale,* the purpose for which the horse was bought, proceeds as follows:

"We are not disposed, however, to rest the case here, but are rather inclined to adopt the rule laid down by Lord Mansfield in *Hodgson* v. *Temple,* 5 Taunt., 181, that *mere knowledge* of the vendor that the purchaser intends to make an illegal or an immoral use of the article purchased, is not sufficient to defeat an action for the purchase money. There must be something more—something to show that the vendor was to participate in the illegal transaction, or that his intention in making the sale was not the ordinary purpose to dispose of his goods to the best advantage, but to aid or promote the illegal or immoral purpose for which the article was bought."

In the case under consideration, the plaintiff, as we have

stated, not only had knowledge, but actively aided in carrying into effect the unlawful purpose.

In *Mordecai* v. *Dawkins,* 9 Rich., 262, it was decided that money lent to game with could not be recovered.

We do not deem it necessary to cite other authorities in support of this salutary principle.

For these reasons, I think the judgment of the Circuit Court should be affirmed.

MR. CHIEF JUSTICE POPE. The husband of Frances Green, one W. M. Green, had been arrested under a warrant caused to be issued by Messrs. Ducker & Bultman, on the charge of having obtained goods under false and fraudulent pretenses, and was lodged in jail. Under these circumstances, the defendant, Frances Green, came to the plaintiff, Samuel M. Pierson, to borrow the money to pay up the note and mortgage of Ducker & Bultman. Two days after her first application, she again came to plaintiff, Pierson, and stated that she wished to mortgage her tract of land to each creditor of her husband, W. M. Green, to secure the payment of her said husband's debts, so that her husband could be released from imprisonment. But the plaintiff told said defendant, Green, that it would cost too much to give mortgages to each creditor, and that he would lend her the money to pay off each of her husband's creditors, if she would give him a mortgage for the aggregate of said claims. This the defendant, Frances Green, agreed to do, and did actually perform. In this way all the claims against the husband of the defendant, Green, were actually paid.

The mortgage executed by said Frances Green was not paid at maturity, and the holder of said mortgage brought his action to foreclose said mortgage against Frances Green, and the holder of a junior mortgage, one J. S. Corbett, as defendants. The defendants alleged that Frances Green had been induced to execute said mortgage to the plaintiff, Pierson, for the sum of $62 and some cents for and

on account of Ducker & Bultman's debt against the husband, W. M. Green, while the latter was in prison for Ducker & Bultman's debt, and also on account of other debts held by other persons against her husband. The plaintiff demurred as to the sufficiency of said answer. The Circuit Judge held the demurrer bad and gave judgment against the plaintiff *in toto.*

Mr. Justice Gary sustained the judgment of the Circuit Judge in its entirety. I think the judgment of the Circuit Judge should be held good only so far as the same is covered by the amount paid to Ducker & Bultman, and the costs, to wit: $62.12, paid to said Ducker & Bultman, and $6.70 paid to H. L. B. Wells, Esq., as magistrate, but that the defendant, Frances Green, should be required to pay the balance of her debt to the plaintiff, to the exclusion of J. S. Corbett's debt and mortgage. Why should not the mortgage of the plaintiff, except as to Ducker & Bultman and the costs of Magistrate Wells, be held as a valid debt of defendant, Green? There was no compulsion in the payment of any of the other debts; no one else but Ducker & Bultman had arrested defendant's husband? There is no law preventing the wife from paying her husband's debts.

In my opinion, the judgment of this Court should modify the Circuit Court judgment by ordering the same confined to the exclusion alone of Ducker & Bultman's claim of $62.12, and $6.70 paid to H. L. B. Wells, Esq., as magistrate, from plaintiff's claim, but all the balance of plaintiff's claim to be paid to the exclusion of defendant Corbett's claim and mortgage

It is the judgment of this Court, that the judgment of the Circuit Court should be and is modified as herein required.

Messrs. Justices Jones *and* Woods *concur in opinion of* Chief Justice Pope.