## 9181

### TUCKER v. COX, AS TRUSTEE, *ET AL.*

#### (86 S. E. 28.)

CONTRACTS AGAINST PUBLIC POLICY. EQUITABLE RELIEF.

1. DEEDS—CONTRACTS—PUBLIC POLICY.—A deed executed without any good or valuable consideration, for the purpose of stopping a criminal prosecution against a third party, is against public policy, based upon an illegal consideration, and void.

2. CONTRACTS—EXECUTORY.—A deed executed to take effect when releases of certain claims against a third party shall have been delivered, conveying property to a trustee to sell and apply the proceeds in settlement of such claims, is executory prior to the delivery of such releases and sale by the trustee.

<hr>

FOOTNOTE.—As to validity of contract to compound a felony, etc., and relief against same, see notes in 26 L. R. A. 48 to .64, 20 L. R. A. (N. S.) 484, 37 L. R. A. (N. S.) 539.

3. CONTRACTS—EQUITABLE RELIEF.—Whenever public policy may be advanced by allowing a party to an illegal contract relief against the transaction, then relief may be given him in equity.

Before MOORE, J., Abbeville, March, 1915. Affirmed.

Action by J. W. Tucker against R. E. Cox, as trustee of the Bank of Calhoun Falls, and the Bank of Calhoun Falls.

The facts are stated in the Circuit decree, as follows:

This action was originally commenced against R. E. Cox, as trustee of the Bank of Calhoun Falls, and the Bank of Calhoun Falls. R. E. Cox, having died after the commencement of this action, S. J. Hester was appointed by the Court as trustee in the place of the said R. E. Cox, by an order passed by me after the argument of the case. S. J. Hester has been substituted as a defendant in the place and stead of R. E. Cox.

The case was heard by me at the March term, 1915, of the Court of Common Pleas for Abbeville county, upon the pleadings, and the testimony taken by the master, and reported to the Court.

The history of the case as disclosed by the pleadings in the testimony is substantially as follows:

Previous to the 28th day of May, 1914, W. J. Tucker, who is a brother-in-law of the plaintiff, was cashier of the Bank of Calhoun Falls. About the 28th of May, 1914, it was discovered by the officers of the bank, that W. J. Tucker was a defaulter to large amount, some $15,000 or $18,000. An effort was made to settle said shortage, or to secure the same, and a paper was drawn up, and signed by W. J. Tucker, stating that he had violated the banking laws of the State, and stating that he desired to settle the same.

Among the provisions in said paper, the following appears: That I, W. J. Tucker, for, and in consideration of the debt, and money that I owe to the Bank of Calhoun Falls, and all claims of any kind whatsoever, that said bank have

against me (a receipt in full of which must be delivered into the hands of my wife, or my attorney, before this deed shall be delivered, or take effect), have granted, bargained, sold, delivered, assigned, set-over, conveyed, transferred and released, and by these presents do grant, bargain, sell, deliver, assign, set-over, convey, transfer and release under R. E. Cox, as trustee, for the Bank of Calhoun Falls. Then follows a description of the property: "To have and to hold, all and singular, the property and premises before mentioned unto the said R. E. Cox, trustee, as aforesaid, his heirs, assigns, and successors forever, in trust, nevertheless, for the following use and purposes, to wit:

To sell the same when in his judgment, after advising with the directors of the Bank of Calhoun Falls, he deem it advisable and for the best interest of those interested in the said Bank of Calhoun Falls. It is my desire that the interest of said bank be subserved at all times by the trustee, as I do not want anyone to lose any money by my conduct, which I exceedingly regret, and the proceeds of sales shall be immediately after sales, deposited in the Bank of Calhoun Falls, by the trustee, and thereafter the net proceeds shall be paid to the Bank of Calhoun Falls, in settlement of the money that I owe it, after first, however, paying to D. H. Hill, for services rendered to me, and to be performed by him by way of assistance to the trustee, legally, and otherwise, a reasonable percentage of the amount passing through the hands of the trustee; I direct that the trustee shall at all times handle all property, so that it will bring as much as possible, and that he shall have the right to employ legal services, and real estate brokers, when he shall deem it advisable."

This paper is dated the 28th of May, 1914. A few days after this paper was executed, the plaintiff, J. W. Tucker, executed a paper to R. E. Cox, trustee, which reads as follows:

"For and in consideration of the Bank of Calhoun Falls, and directors thereof, agreeing that they will release all claims of any kind, whatsoever, either criminally or civilly, which they have had, or may have, against my brother-in-law, W. J. Tucker, and for and in consideration of the sum of $3, paid to me by said bank, receipt whereof is hereby acknowledged, I, J. W. Tucker, of Calhoun Falls, and a member of the firm of Tucker Lumber Co., which is, and was, composed of myself and W. J. Tucker, do hereby grant, bargain, sell, assign, set-over, deliver, and transfer, and by these presents, do grant, bargain, sell, assign, convey, set-over, deliver, and transfer unto R. E. Cox, trustee, for the use and benefit of the Bank of Calhoun Falls, on the same condition, and with the same directions as contained in a deed by W. J. Tucker, and said R. E. Cox, trustee, dated May 28, 1914, and recorded in Deed Book 32, pages 497-498." (Then follows the description of the property.) And then the following: "I hereby authorize the said R. E. Cox, trustee, his agents, successors, or assigns, to take immediate possession of said property, and I hereby vest the titles and all my interest in said property in the said R. E. Cox, trustee, his successors, or assigns, for the benefit of the Bank of Calhoun Falls." This paper is dated June 9, 1914.

The testimony is conflicting, as to what occurred at the execution of this paper.

The plaintiff testified that one of the directors of the bank, threatened to send after W. J. Tucker, and put him behind the bars and prosecute him for the violation of the banking laws of the State, unless he, the plaintiff, would sign a paper, deeding his property to R. E. Cox, as trustee, for the said bank, in order to help make up the shortage; on the other hand, the testimony offered by the bank, tended to show that the plaintiff signed said paper freely and voluntarily.

According to the view the Court takes of the testimony, and of the law applicable thereto, it does not make any dif-

ference whether the plaintiff signed the paper voluntarily or under duress, as the paper shows on its face that it was given partly, at least, to compound a criminal prosecution.

The law is well settled that any security given to compound a criminal prosecution, is null and void, as being against public policy. *Corley* v. *Williams,* 17 S. C. L. (1 Bail. Rep.) 588; *Williams* v. *Walker,* 18 S. C. 584; *Groesbeck* v. *Marshall,* 44 S. C. 543, 22 S. E. 743; *Bleckley* v. *Goodwin,* 51 S. C. 362, 29 S. E. 3.

The only matter that has given me any concern in this case, was the question as to whether the paper signed by the plaintiff, was an executed, or executory contract. In the case of *Booker* v. *Wingo,* 29 S. C. 116, 7 S. E. 49, the Court seemed to indicate that there might be cases, in which the parties being *in pari delicto,* that a Court of equity would not aid one of the parties, either by enforcing the contract, or obligation, while it is yet executory, or by relieving him against it by setting it aside, or by enabling him to recover the titles of property, which he has parted with by its means.

That case, however, when rightly understood, does not militate against the conclusion reached as below stated in the case at bar, as the contract here sought to be set aside must be held to be an executory contract. In the subsequent case of *Groesbeck* v. *Marshall,* 44 S. C. 543, 22 S. E. 743, our Supreme Court says:

"A note given by a third person as compensation for the civil injury in a case of this kind is without consideration." (It should be stated right here that the note in suit in that case was given by J. Q. Marshall to prevent a criminal prosecution against Foster Marshall, the brother of defendant, upon a charge of embezzlement, alleged to have been committed in Missouri.)

In the case of *Williams* v. *Walker, supra,* the Court says:

"But where a note is given by a person not liable for the damages sustained by the party injured, for the purpose of stopping a procecution, even for assault and battery, it will

be held void, as based upon an illegal consideration, because in such a case the consideration can not be referred to the compensation due by one to the other, for there is nothing due in such a case from the maker to the payee of the note, and the consideration must be referred to the stopping of the prosecution, and is, therefore, illegal. These views are fully supported by the following cases: *Corley* v. *Williams,* 17 S. C. L. (1 Bail.) 588; *Mathison* v. *Hanks,* 2 Hill 625, 20 S. C. L.; *Banks* v. *Searles,* 2 McMull. 356, 27 S. C. L.; *Gray* v. *Seigler,* 33 S. C. L. (2 Strob.) 117. See, also, *Hearst* v. *Sybert,* 25 S. C. L., Cheves 177. The case of *Booker* v. *Wingo,* 29 S. C. 116, 7 S. E. 49, differs from the case of *Williams* v. *Walker* in some important particulars:

1. The deed executed and delivered by the third party was based upon a valuable consideration apart from the compensation made for the civil injury sustained by reason of the criminal act.

2. The contract was executed, the grantee performed his part of the contract, and the grantor acquiesced in his possession for eighteen months.

Under these circumstances, the Court refused to lend its aid, as the parties were *in pari delicto,* especially as the *status quo* could not be restored, nor had there been any offer to restore it."

It seems to be clear, however, that this contract, signed by J. W. Tucker, is an executory contract.

In 9 Cyc. 244, executory and executed contracts are defined as follows:

"An executed contract is a contract which has been fully performed since it was made, or which was performed at the time it was made, so that nothing remains to be done on either side, and an executory contract is one which is either wholly unperformed or in which there remains something to be done on both sides, or on one side. A contract may be executed on one side, and executory on the other. An executed contract of sale is a bargain and sale which has passed

the property in the thing sold, while executory contracts of sale are contracts as opposed to conveyance and create rights *in personam* to a fulfillment of their terms instead of rights *in rem* to an enjoyment of the property passed."

In this case it appears that the property has never been sold, and that it can not be sold, nor good titles passed, until Mrs. W. J. Tucker receives a full receipt for all debts due the Bank of Calhoun Falls, by the said W. J. Tucker. This being so, the contract is an executory contract.

The main ground for refusing relief in the case of *Booker* v. *Wingo,* was because the *status quo* could not be restored, and no offer was made to restore it.

But if equity can afford relief, then it will interfere, whether the transaction is executed, or executory.

3 "Wherever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him.

In pursuance of this principle, and in compliance with the demands of public policy, equity may aid a party equally guilty with his opponent, not only by cancelling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance or transfer, and decreeing the recovery back of money paid, or property delivered in performance of the agreement." *Basket* v. *Morse,* 20 S. C. 736, Pom. Eq. Juris., sec. 941, 3d edition.

The contract signed by J. W. Tucker refers to one made by W. J. Tucker, and the two have to be construed together to determine what the contract means. The agreement of W. J. Tucker shows that something remains to be done, in order to base the title as against said Tucker, and the same rule applies to the contract of the plaintiff, J. W. Tucker.

This being my view of the law in the case, I hold that the plaintiff is entitled to the relief prayed for in his complaint.

It is, therefore, ordered, adjudged and decreed, that the deed given by the plaintiff to R. E. Cox, as trustee for the Bank of Calhoun Falls, be, and the same is hereby, set aside

as contrary to public policy, null and void, and the said S. J. Hester, trustee, is ordered to turn over the same to the clerk of Court, who is hereby ordered to cancel the same of record.

That the said S. J. Hester and the Bank of Calhoun Falls, restore at once to the possession of the plaintiff the property described in the complaint in this action, or in case a delivery can not be had, that he, or the Bank of Calhoun Falls, pay to said plaintiff, or his attorneys, the value of said property as testified to by the plaintiff before the master.

It is further ordered that the defendants pay the costs of this action to be taxed by the clerk of the Court.

That the plaintiff have the right to apply at the foot of this decree for such further order, or orders, as may be necessary to carry into effect this decree.

The defendants appealed from the decree and judgment, on the following grounds:

1st. Because there was error as a matter of law in his Honor ruling and ordering that the written instrument in the case executed by the plaintiff should be set aside as null and void as being against public policy.

2d. Because his Honor erred in not holding that there was a good and sufficient consideration to support the contract in the case at bar, and that, therefore, the contract should be allowed to stand, irrespective of the fact that there might have been another inducement held out to the plaintiff.

3d. Because his Honor erred in not recognizing in his decree that there are exceptions to the rule that "contracts made solely on compromise of indictments for crime will, as a rule, be set aside."

And he erred in not holding the case at bar to be one of the exceptions.

4th. Because his Honor erred in holding the contract at bar to be an executory contract, whereas the entire record shows that the contract was an executed contract.

5th. Because his Honor erred in not holding that, even if the defendants had held out to the plaintiff an illegal consideration, the plaintiff and defendants were, nevertheless, *in pari delicto* and equity should not now at the instance of the plaintiff declare the transaction void.

6th. Because, even if it should be conceded that the contract was executory on the side of the defendants, it was, nevertheless, executed on the side of the plaintiff, and his Honor erred in not so holding, and also, in not holding that the plaintiff should not now be heard to complain, since to allow him to do so would be to allow him to take advantage of his own wrong.

7th. Because his Honor erred in holding in his decree that the case of *Booker* v. *Wingo, 29* S. C. 116, 7 S. E. 49, does not militate against the conclusions reached by him in the case at bar; whereas, it is respectfully submitted to this Court, that the doctrine laid down in *Booker* v. *Wingo* is entirely contrary to the conclusions and holdings of his Honor in the decree herein.

8th. Because his Honor erred in holding that "the main ground for refusing relief in the case of *Booker* v. *Wingo,* was because the *status quo* could not be restored and no offer was made to restore it; whereas, it is respectfully submitted, that said case will not bear such an interpretation, but shows clearly that the refusal of relief was based upon the fact that the Court thought the parties were *in pari delicto,* and, therefore, a Court of equity should not grant relief; and said case should have been so interpreted and applied in the case at bar.

9th. Because his Honor erred in not holding that the case at bar came within the rule laid down in *Booker* v. *Wingo,* and, therefore, equity should not afford relief.

10th. Because his Honor erred in his conclusion regarding the nature of the contract at bar, wherein his Honor states, in referring to the W. J. Tucker deed, "In this case it appears that the property has never been sold and that it can

not be sold and good titles passed until Mrs. W. J. Tucker receives a full receipt for all debts due the Bank of Calhoun Falls by the said W. J. Tucker;" whereas, the record shows that the W. J. Tucker deed was delivered and recorded and completely executed on the side of W. J. Tucker, and a receipt delivered according to the requirements of the deed. And his Honor erred in his conclusion that this had any bearing on the contract at bar, tending to throw any light on whether it be an executed or an executory contract.

11th. Because his Honor erred in not holding that the contract in question was an executed contract, the parties *in pari delicto,* and neither of them in a position to demand aid from a Court of equity, and his Honor erred in not deciding the case in favor ·of the defendants on the grounds above stated.

12th. Because his Honor erred in not allowing the contract to stand, on the grounds that there was a money consideration sufficient to support the contract, irrespective of other features of the case.

*Mr. D. H. Hill,* for appellant, cites: *Executed contract:* 2 N. & McC. 581; 10 Am. Dec. 638.    *In pari delicto:* 1 Bail. 588; 2 Hill 625; 2 McMull. 356; 2 Strob. 117; 102 N. Y. 372; 55 Am. Rep. 815; 32 Am. Dec. 223; 2 Brev. 27; 11 Rich. L. 643; 29 S. C. 116.    *Property delivered to compound a felony cannot be recovered:* 67 Ala. 92; 30 Ga. 547; 11 Minn. 255; 15 Barb. 541; 80 N. Y. 627.

*Mr. J. M. Nickles,* for respondent, cites: 44 S. C. 538; 1 Bail.·588; 2 Hill 625; 2 McMull. 356; 2 Strob. 117; Chev. 177; 29 S. C. 116; 51 S. C. 362; 9 Cyc. 244; Pom. Eq. Juris. 941; 20 S. C. 736; 32 Cyc. 1251.

August 26, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

We are satisfied with the opinion of the Circuit Court, and it is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.*    I concur in the result. It seems to me that the trust deed was a mere security for a debt, and, therefore, a mortgage.

MR. JUSTICE HYDRICK dissents.