14924

LIBERTY MUTUAL INS. CO. v. GILREATH

(4 S. E. (2d), 126)

February, 1939.

*Messrs. Osborne, Butler & Moore,* for appellant,

*Mr. Esten C. Taylor,* for respondent,

July 25, 1939.

The opinion of the Court was delivered by MR. G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE.

This is an action upon a promissory note executed by John H. Gilreath on November 7, 1935, in favor of the appellant, which note was endorsed by P. D. Gilreath, T. G. Gilreath and J. F. Gilreath, Jr., The complaint is in the usual form. The maker and all endorsers, except respondent, are non-residents of this State, and for this reason respondent alone was designated as party defendant. In his answer respondent admitted the execution of the note and his endorsement, but denied that said note was executed for value, and set up the following defense:

"1. That as defendant is informed and believes, plaintiff is and was at all the times hereinafter referred to, a corporation, engaged in the business of acting as surety, for compensation, on the bonds of employees entrusted in the course of their employment, with the handling of funds of their employers, the purpose of such bonds being to indemnify such employers against any loss which they might sustain by reason of the misappropriation of their funds by such employees.

"2. That for a considerable period of time prior to the 7th day of November, 1935, John H. Gilreath, who is a brother of this defendant, had been in the employ of Pelzer Manufacturing Company, located at Pelzer, in Anderson County, South Carolina, the duties of the said John H. Gilreath being such, as defendant is informed and believes, as to require him to handle certain of the funds of said Pelzer Manufacturing Company; that, as defendant is informed and believes, this plaintiff, in consideration of the premium paid therefor, became surety on the bond which said Pelzer Manufacturing Company required the said John H. Gilreath to execute to it, which bond guaranteed the faithful performance by the said John H. Gilreath of his duties and that he would fully account to his said employer for all monies of his said employer passing through his hands.

"3. That as this defendant is informed and believes, the said bond was prepared by plaintiff and provided, among other things, that in the event of a shortage in the accounts of the said John H. Gilreath with said Pelzer Manufacturing Company or his failure to account to said company for any of its funds passing through his hands said company would render all possible assistance in preferring and prosecuting criminal charges against said John H. Gilreath.

"4. That some time prior to the 7th day of November, 1935, as defendant is informed and believes, an alleged shortage in the accounts of the said John H. Gilreath with

said Pelzer Manufacturing Company was discovered, by reason of which a claim was made by said company against plaintiff on the bond of said John H. Gilreath upon which plaintiff was surety; that as a result of said alleged shortage a criminal charge was lodged against the said John H. Gilreath of breach of trust with fraudulent intent, resulting in his indictment by the Grand Jury of Anderson County on said charge.

"5. That while said charges were pending against the said John H. Gilreath in the Court of General Sessions of Anderson County negotiations were entered into between the plaintiff and the said John H. Gilreath and his brothers, this defendant and J. F. Gilreath, Jr., and T. G. Gilreath, upon a proposal that the said John H. Gilreath execute his promissory note for the amount of the alleged shortage, said note to be payable in monthly installments and to be indorsed by the defendant and his said brothers, J. F. Gilreath, Jr., and T. G. Gilreath, in consideration of the withdrawal of said criminal charges against the said John H. Gilreath.

"6. That this defendant and his brothers were greatly distressed at the plight of their brother, John H. Gilreath, and were anxious to do anything within their power to extricate their said brother from his difficulties; that being assured by plaintiff, acting through its agents and servants, that the matter could be disposed of in accordance with said proposal and being satisfied with the *bona fides* of the transaction said note was executed by the said John H. Gilreath and indorsed by this defendant and his brothers, J. F. Gilreath, Jr., and T. G. Gilreath; that both before and at the time of the delivery of said note it was emphatically stated to plaintiff, its agents and servants, by and on behalf of this defendant and his said brothers, that said note was executed and endorsed as aforesaid upon the sole consideration of the agreement of plaintiff to secure the dismissal of said criminal charges against the said John H. Gilreath; that this defendant and his said brothers would be bound

for the payment thereof only in the event plaintiff should succeed in securing a dismissal of said criminal charges against the said John H. Gilreath, and that in the event of the failure of plaintiff to secure such dismissal said note was to be considered as utterly null and void and of no effect; that said note was accepted by plaintiff upon this sole and express understanding and agreement.

"7. That as defendant is informed and believes, this plaintiff, by its agents and servants, did, upon the delivery of said note and in recognition of said agreement make certain efforts to secure the dismissal of said criminal charges against the said John H. Gilreath, but that the efforts of plaintiff in that behalf were unavailing.

"8. That the sole consideration for said note and defendant's indorsement thereof was the agreement of plaintiff to secure the dismissal of the said criminal charges against the said John H. Gilreath; that as this defendant is informed and believes said agreement was illegal, contrary to public policy and utterly null and void, all of which was well known to plaintiff."

Appellant demurred to this defense and moved to strike such allegations from the answer upon certain grounds which will be hereinafter discussed. The demurrer and motion were heard by Hon. T. S. Sease, Resident Judge of the Seventh Judicial Circuit, who, in an able and well-considered order, overruled the demurrer and refused the motion. From this order appellant appealed.

The principal question raised by the exceptions is whether or not the agreement or contract referred to in said defense is illegal and void, as being against public policy. The Circuit Judge held that it was illegal and void.

It is not contended by the respondent that the note was procured by the exercise of fraud.

It will be observed that the answer alleges that the sole consideration of said note was an agreement on the part of appellant to secure the dismissal of the criminal charges

then pending against the brother of respondent. The demurrer admits the facts alleged in this defense.

The offense charged was breach of trust with a fraudulent intention, which in this State is a felony.

The general rule is that agreements to compromise or stifle public prosecutions and similar agreements tending to obstruct or interfere with the administration of justice, are contrary to public policy. Good faith of the parties at the time of the agreement does not change the rule. Some of the cases apparently recognize an exception to this general rule "in cases of assault and battery, and other misdemeanors of like nature." Since none of the exceptions to the general rule are applicable to the issues here presented, it is unnecessary to discuss same. These general principles have been settled in this State by a long line of decisions, among which are the following: *Corley v. Williams,* 1 Bailey, 588; *Gray v. Seigler,* 2 Strob., 117; *Williams v. Walker, Fleming & Co.,* 18 S. C., 577; *Groesbeck v. Marshall,* 44 S. C., 538, 539, 22 S. E., 743; *Bleckley Co. v. Goodwin,* 51 S. C., 362, 29 S. E., 3; *Pierson v. Green,* 69 S. C., 559, 48 S. E., 624; *Tucker v. Cox,* 101 S. C., 473, 86 S. E., 28; *Lawrence v. Hicks,* 132 S. C., 370, 128 S. E., 720; *Whitlock v. Creswell,* 190 S. C., 314, 2 S. E. (2d), 838.

In the case of *Lawrence v. Hicks, supra,* the Court quotes with approval the following (132 S. C., 370, 128 S. E., 721): "Agreements calculated to impede the regular administration of justice are void as against public policy, without reference to the question whether improper means are contemplated or employed in their execution. The law looks to the general tendency of such agreement, and it closes the door to temptation, by refusing them recognition in any of the courts of the country."

Appellant contends that the agreement in question does not come within the foregoing rule because the prosecution had reached the point where a true bill had been found by a Grand Jury, and consequently it was

not within the power of appellant to dismiss or stop the prosecution. It is urged that only the Solicitor could discontinue the prosecution, and in his brief appellant says "all it could do and all that it did do was to promise to attempt to procure dismissal of such charge."

We see no difference in principle between an agreement not to issue, or withdraw a warrant, and an agreement to attempt to prevail upon a public officer to discontinue a prosecution after a true bill has been found by the Grand Jury. It is the duty of a citizen having knowledge of the commission of a felony to make full disclosure to the public authorities, and to assist them in bringing the felon to justice. An agreement to attempt to procure dismissal of an indictment is fully as much a violation of that duty as an agreement not to issue, or to withdraw a warrant. One with knowledge of the commission of a felony should not put himself in a position where his obligation under a contract conflicts, or might conflict, with his duty as a citizen. The tendency of such agreements is to influence and interfere with the even flow of justice and this will not be tolerated. Such an agreement may be entered into by one who fails to realize its implications, and who therefore may be said to have acted in good faith, but that affords no reason why the Court should enforce the agreement, thus permitting him to profit by it. Nor can it be saved by an intent not to use improper means to obtain dismissal of the indictment. The danger inherent in such an agreement is too great to permit its validity to depend on the secret intent of a party thereto.

In the case of *Gray v. Seigler, supra,* a bond, given to secure the payment of money for compounding a prosecution for libel, was held to be void. An indictment was then pending on the charge. By the terms of the bond plaintiff obligated himself to cause the controversy to be terminated, provided the case could be withdrawn from the hands of the solicitor and taken out of Court. No difference was recognized

by the Court because the prosecution had resulted in an indictment. In commenting on the practice of undertaking to have such prosecutions withdrawn, the Court said: "Such a temptation, therefore, to defendants, as well as to prosecutors, must not be justified by judicial authority, to put the Solicitor's office at the beck and call of selfish men, by allowing so extraordinary a privilege of interfering with public rights."

The North Carolina Supreme Court, in the case of *Aycock v. Gill,* 183 N. C., 271, 111 S. E., 342, 343, 24 A. L. R., 1449, quotes numerous authorities to sustain the following statement: "It has been held that agreements to use influence, or tending to encourage the use of influence, with the prosecuting attorney in respect to criminal prosecutions are illegal."

The fact that it was beyond the power of appellant to withdraw the prosecution is immaterial. It is not essential to sustain the illegality of such agreement that there be a promise to dismiss a criminal prosecution, followed by actual withdrawal or dismissal. The illegality of such transactions does not depend upon the successful consummation of the effort to dismiss. The vice is in the agreement and not in the successful performance of same. No case has been cited, and we know of none, recognizing any such qualification to the general rule as contended for by the appellant.

While there may be certain expressions contained in the case of *Booker v. Wingo,* 29 S. C., 116, 7 S. E., 49, which tend to support the contention of appellant, such expressions are by way of *dicta.* The Court held that it would not set aside the transaction because it was executed, the status quo could not be restored, the parties were *in pari delicto,* and a Court of equity would not give its aid to either. Furthermore, there was a valuable consideration in that case apart from the compensation made for the civil injury sustained by reason of the criminal act. This distinction was recog-

nized in the subsequent cases of *Groesbeck v. Marshall, supra,* and *Tucker v. Cox, supra.*

Nor do the views herein announced conflict with the decision rendered in the case of *Bankhead v. Shed,* 80 S. C., 253, 61 S. E., 425, 16 L. R. A. (N. S.), 971, 15 Ann. Cas., 308. The chattel mortgage in that case was between the original parties concerned and rested upon a valid consideration between the parties. The Court held that the existing debt was a valid consideration to support the mortgage. No third party was sought to be bound by an obligation, as to him based solely upon a consideration to stop criminal proceedings. In the instant case the respondent was not in any way indebted to appellant and he alleges that the sole consideration for his endorsement was the agreement to withdraw the criminal proceedings.

It is further urged that parol evidence is inadmissible to show the agreement set out in the answer. Having reached the conclusion that such agreement is illegal and void, parol evidence is clearly admissible to prove same. In passing upon this question the Court, in the case of *Groesbeck v. Marshall, supra,* said (44 S. C., 538, 22 S. E., 745) : "When the defense is interposed that a contract is illegal, there is no necessity to cite authorities to show that it is competent to introduce parol testimony as to all the facts and circumstances surrounding the transaction, just as in a case where usury is pleaded."

It is argued that appellant is entitled to reimbursement from John H. Gilreath for the loss it has sustained. It is well settled that where propery has been stolen or funds embezzled, it is not unlawful for the wrongdoer to make restitution and to satisfy the civil liability created by the wrong. Neither does the law prevent one, who has sustained a loss under such circumstances, from compromising with the wrongdoer, if it is not agreed either expressly or impliedly, that the prosecution for the offense shall be suppressed or stayed. Such an agreement, however,

must not be in consideration that a criminal prosecution shall be suppressed, stifled or stayed. See cases reviewed in annotation, 32 A. L. R., 422.

Inasmuch as fraud is not claimed by respondent, exceptions to the effect that future promises cannot constitute a basis for a misrepresentation need not be considered.

Appellant presents twenty-five exceptions. We have not considered them seriatim, but the foregoing discussion disposes of all issues raised.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.