**GEORGE v. LEONARD et al.**
**Civ. A. No. 1445.**

District Court, E. D. South Carolina.

May 7, 1947.

Wise & Whaley, of Columbia, S. C., for plaintiff.

David W. Robinson, of Columbia, S. C., and John K. deLoach, of Camden, S. C., for defendants.

WYCHE, District Judge.

This action for malicious prosecution was consolidated for trial with an action for abuse of process, 71 F.Supp. 662. After the completion of plaintiff's evidence I granted the motion of the defendants for a dismissal in this action upon the sole ground that the prosecution was terminated by agreement between the parties upon the consent of the plaintiff. The case is now before me at my request for reargument, and on plaintiff's subsequent motion for a new trial.

■ At the time of granting the motion for dismissal, I stated that the motion was granted on the authority of Jennings v. Clearwater Manufacturing Co., 171 S.C. 498, 172 S.E. 870, 873. An examination of that case will disclose that the Supreme Court of South Carolina, while recognizing the general rule, "that, if a prosecution is terminated by agreement between the parties, or at any instance, or upon the consent, of the accused, there is no such termination as will support an action for malicious prosecution," approved the following exception to that rule, it "is not applied in cases where the settlement was not voluntarily and understandingly made, but was made under coercion or duress; nor where the dismissal is not shown to have been the result of a valid compromise or settlement".

The reason for the general rule " '(1) seems to be that where the termination of the case is brought about by a compromise or settlement between the parties, understandingly entered into, it is such an admission that there was probable cause that the plaintiff cannot afterwards retract it and try the question which by settlement he waived.' White v. International Text Book Co., 156 Iowa 210, 214, 136 N.W. 121, 42 L.R.A.,N.S., 346. (2) One who compromises a claim against himself virtually admits the justice of the claim, and the existence of probable cause for instituting the proceeding (Ruble v. Cohn, 212 Ill.App. 563; Saner v. Bowker, 69 Mont. 463, 222 P. 1056; Murson v. Austin, 2 Phila.,Pa. 116, 117), (3) and is estopped to deny the existence of probable cause (Emery v. Ginnan, 24 Ill.App. 65; Morton v. Young, 55 Me. 24, 92 Am.Dec. 565)." 38 C.J. 444, Note 13(a).

When the reason for the rule is considered, the rule should be stated as follows: If the dismissal of the warrant was a result of a valid compromise or settlement of the prosecution between the plaintiff and the defendants, and the settlement or compromise was voluntarily, freely and understandingly made, and not made under coercion or duress, the plaintiff cannot maintain this action for malicious prosecution, for under such facts it cannot be said that there was a lack of probable cause; but, if the settlement was not voluntarily, freely and understandingly made, or if it was made under coercion or duress, or if the settlement was made with the plaintiff asserting his innocence and with the statement that he was paying under protest, and giving a reasonable reason for compromising the case, or if the dismissal of the warrant was the result of an invalid compromise and settlement, it may be found that under all the evidence that there was a lack of probable cause, and under such circumstances it ought not to be said that the prosecution did not end favorably to the plaintiff. See White v. International Text Book Co., 156 Iowa 210, 214, 136 N.W. 121, 42 L.R.A., N.S., 346.

■ When one begins a criminal prosecution in good faith, it should be prosecuted to the end that the law may be vindicated. Compounding a felony is illegal, and agreements involving such compromises, either in whole or in part, are void.

In the case of Liberty Mutual Ins. Co. v. Gilreath, 191 S.C. 244, 4 S.E.2d 126, 128, 129 A.L.R. 1148, the Supreme Court of South Carolina, said: "The offense charged was breach of trust with a fraudulent intention, which in this State is a felony. The general rule is that agreements to compromise or stifle public prosecutions and similar agreements tending to obstruct or interfere with the administration of justice, are contrary to public policy. Good faith of the parties at the time of the agreement does not change the rule."

■ The only crime that may be compromised under the law of South Carolina

is an offense for drawing and uttering a fraudulent check. § 1167, Code of Laws of South Carolina, 1942.

■ By the weight of opinion, a contract to suppress a criminal prosecution is illegal whether the person charged be innocent or guilty. Annotation 17 A.L.R. 327; Shaulis v. Buxton, 1800, 109 Iowa 355, 80 N.W. 397; W. T. Joyce Co. v. Rohan, 1907, 134 Iowa 12, 111 N.W. 319, 120 Am.St.Rep. 410; Howk v. Eckert, 1874, 4 Thomp. & C., N.Y., 300; Gardner v. Maxey, 1848, 9 B.Mon.Ky., 90; Gorham v. Keyes, 1884, 137 Mass. 583; Beal v. Doyle Dry Goods Co. v. Barton, 1906, 80 Ark. 326, 97 S.W. 58; Schultz v. Culbertson, 1879, 46 Wis. 313, 1 N.W. 19; Garner v. Qualls, 1856, 49 N.C. 223, 4 Jones, Law 223; Corbett v. Clute, 1905, 137 N.C. 546, 50 S.E. 216; Chandler v. Johnson, 1869, 39 Ga. 85; Crowder v. Reed, 1881, 80 Ind. 1; Dixon v. Olmstead, 1837, 9 Vt. 310, 31 Am.Dec. 629; Puckett v. Roquemore, 1875, 55 Ga. 235; Haynes v. Rudd, 1886, 102 N.Y. 372, 7 N.E. 287, 55 Am.Rep: 815; Daimouth v. Bennett, 1853, 15 Barb., N.Y., 541.

■ The plaintiff was charged with breach of trust with fraudulent intention. The compromise of the prosecution was therefore invalid, and would not bar plaintiff's action for malicious prosecution.

■ The evidence discloses that the prosecution was dismissed and terminated after an agreement to settlement brought about by the father of the plaintiff and the agent of the defendants, with the acquiescence of the plaintiff, while asserting his innocence, and giving his reasons for agreeing to the settlement.

The plaintiff testified: " 'Dixie, (R. B. Boykin, agent for defendants) I don't owe Mr. Leonard any money. I have got to get away from here to get back to Shaw Field. If I don't qualify tomorrow you know I can't get my job back. If I pay you any money I am not accepting any guilt. I will certainly pay you over my protest.' * * * I said, 'Judge, (the Magistrate) we are not accepting any guilt in this matter. We are protesting this payment but I have to get away from here. He has kind of got me where I can't get out but I have got to go and we are paying this under protest.' " Upon cross-examination Carl

George testified: "I told Dixie in front of the Magistrate that we are not accepting any guilt in this matter. We were paying it under protest. * * * I told him we were not accepting any guilt whatever in this matter and we were paying this thing under protest and I had to get to Shaw Field and I would see him later about it."

The Magistrate testified that M. H. George (plaintiff's father) said: " 'Judge, my boy is innocent.' " He said: " 'He has been unfortunately webbed into circumstances and bearing the blame for someone else.' "

M. H. George, father of plaintiff, testified that he told R. B. Boykin (agent for defendants): " ' Under the circumstances, and in the position that I am in, the way I feel about it, I am afraid there is going to be bloodshed here unless he is taken away from Sunny Hill and I am anxious to get him back on his job. If you will give Carl credit for what Mr. Leonard promised him, I believe he can raise the difference.' "

M. H. George further testified that Carl (the plaintiff) said to R. B. Boykin (agent for defendants), " 'Dixie, we'll meet you over at the Magistrate's office and I will pay you this money, but' ", he said, " 'I am not accepting any guilt, and it is under my protest that I am paying.' " Further Mr. George stated that Carl (the plaintiff) told the Magistrate that "he wasn't accepting any guilt whatsoever; that he just wanted to get released and get back on his job."

M. H. George testified that after the warrant had been dismissed, "Carl was just boiling over. He was just as nervous as he could be. He turned right around and walked out. I turned around to the Judge and shook hands with him and told him I was glad to have met him. Mr. Boykin was standing between me and the door and I walked on and caught him by the hand and I said: 'Mr. Boykin, I'll be seeing you.' "

The warrant of arrest at first charged the plaintiff with breach of trust with intent to defraud, in that plaintiff sold turkeys of unknown quantity as yet, the known quantity being in the value of $42.50. The warrant was amended after the plaintiff was arrested and incarcerated in jail. The amendment to the warrant set forth: "Up-

on completing check of the two (2) flocks of turkeys, which was in the charge and care of Carl George, on the Sunny Hill Plantation, deponent, the said R. B. Boykin, found about thirty-five (35) grown turkeys short or missing, and about fifty (50) of the half grown turkeys are missing; * * * the value of the turkeys unaccounted for, and of which he does not admit of having disposed of, is in the sum of four hundred twenty-seven dollars and fifty cents ($427.-50)." Signed, Leonard Const. Co. R. B. Boykin, Agt. There was no question as to the validity of the warrant or the amendment thereof.

When the circumstances of a man's acts are the subject of legal inquiry the circumstances attending and the motives prompting them are proper matters for consideration.

It now seems to me that this case should have been submitted to the jury. For this reason I have ordered a new trial.